## JOHN G. JAY et al. *vs.* JOHN M. MICHAEL.

*Way of Necessity—Implied Reservation—Injunction—Obstruction.*

When a party is entitled to a way of necessity over another's land and such an existing way has been used, the owner of the servient tenement cannot rightfully obstruct the same until he has assigned another suitable way.

A person entitled to a way of necessity over defendant's land to his own land, may ask for an injunction to prevent the obstruction thereof.

The provisions of *Code*, Art. 25, secs. 100, etc., relating to the acquisition of private ways by paying therefor, do not affect the right of a party who is entitled to a way of necessity.

A way of necessity is an exception to the rule that if a grantor intends to reserve any right over the tenement granted it must be expressly reserved in the grant.  So if the owner of two tracts of land, when the only means of access to one is through the other, grants the latter tract, he impliedly reserves a way of necessity through it to the former tract retained by him, although his deed contains a covenant of warranty.

A right of way of necessity is suspended until the necessity for its use arises, and ceases when the necessity for its use ceases.

A was a life-tenant of two tracts of land called respectively, " Mould's Success " and " Horner's Fishery."  The only means of access to the latter, except by water, was by a road through the former, which had been used for many years for that purpose.  The plaintiffs were entitled to the reversion in fee in both tracts after the death of A.  They conveyed their interest in " Mould's Success " only to A, and he conveyed both tracts to defendant's grantor with covenant of warranty and without any express reservation of a right of way.  After the death of A the plaintiffs brought an action of ejectment against defendant for " Horner's Fishery " and recovered judgment.  Defendant obstructed the above-mentioned road leading across " Mould's Success" to " Horner's Fishery."  Upon a bill for an injunction, *Held*, that in plaintiffs' deed to A, of their estate in " Mould's Success," there was an implied reservation of a right of way to " Horner's Fishery " for the benefit of their reversion in the latter, and the defendant being in privity of estate with A the reservation implied in favor of the plaintiffs against A equally affects the defendant.

Appeal from a decree of the Circuit Court for Harford County (Watters, J.), dismissing the bill of complaint.  The

tract of land called " Horner's Fishery" referred to in the
opinion of the Court is indicated on the following map by
dotted lines :

The cause was argued before McSHERRY, C. J., FOWLER,
PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*W. Irvine Cross* and *John L. G. Lee* for the appellants :

1. Equity will protect the enjoyment of a right of way over
a street, alley or road by restraining the erection of obstruc-

tions thereon, the interference being based upon the irreparable injury to the person aggrieved. *High, Iujunctions*, sec. 886; *Beach, Injunctions*, sec. 1025; *Roman* v. *Strauss*, 10 Md. 89; *McConnell* v. *Rathburn*, 46 Mich. 303; *French* v. *Smith*, 40 N. J. Eq. 361; *Amelung* v. *Seekamp*, 9 G. & J. 468; *Shipley* v. *Caples*, 17 Md. 179.

2. The appellants claim that they have a way out over the land of the appellee, by virtue of an implied reservation in a deed from John Jay, the father of the appellants, to James B. Baker, grantor of John M. Michael. A way of necessity derives its origin from a grant. This road is admittedly the only road to, and has been used for fifty years in connection with this property. There will be implied a reservation of a way of necessity. *McTavish* v. *Carroll*, 7 Md. 352. A way of necessity is the only easement which may be implied as reserved in a deed of grant. *Mitchell* v. *Seipel*, 53 Md. 262. Where, however, complainant alleges a prescriptive right of way over defendant's land to a public road and a market, and that he has no other means of outlet except a circuitous and inconvenient route, he makes out a sufficient case of irreparable mischief to entitle him to an injunction. *Shipley* v. *Caples*, 17 Md. 179. The bill in this case sets up a right by prescription, and Samuel Jay's testimony confirms the bill. A private right of way over the land of another must be founded either on grant or prescription which presupposes a grant. *Pue* v. *Pue*, 4 Md. Ch. 386.

A way of necessity arises where the grantor retains the interior and grants away the exterior land. 19 *Amer. and Eng. Ency. Law*, 96. Numerous cases favor the idea that a right of way may be created by the necessity irrespective and independent of any grant or reservation either express or implied, but in most instances it is upheld òn the ground of a grant or reservation implied from the necessity—*Ibid.* As to what constitutes a necessity sufficient to raise an implied grant of a right of way, some Courts have held that it need not be an absolute and irresistible necessity, and that mere inconvenience may be so great as to raise such an implication. But in most instances

mere convenience or usefulness is not sufficient, there must be
an absolute indispensable necessity to give the right. The way
of necessity is limited by the necessity which creates it, and
ceases when the necessity no longer exists. If A conveys land
to B, to which B can have access only by passing over another
land of A, a way of necessity passes by the grant. If A con-
veys land to B leaving other land of A, to which he can have
access only by passing over the land granted, a way of neces-
sity is reserved in the grant. These points are settled. Is the
rule affected by the fact that grantor conveys with a warranty?
We think not. If the way were expressly reserved in the deed
the covenants must apply to the premises granted; there is an
estate with the right of way reserved or carved out of the fee.
In the present case the law does for the parties the same thing,
and the covenants apply to an estate with this way of necessity
reserved. *Brigham* v. *Smith*, 4 Gray, 297.

3. The other side claim that this is not a way of necessity,
because the appellants could acquire a road under the Code.
The usual instances of rights of way of necessity to be found
in the books are where there have been grants of land sur-
rounded on all sides by the land of the grantor, if no outlet
exists otherwise, it will be a way of necessity over the grantor's
land; so is it if the grantor retain the interior and grants away
the exterior land. *Woolrich on Ways*, 20; *Ogden* v. *Grove*, 38
Pa. St. 489. The way of necessity exists where there is no
other way of access to the land of the complainant. *Washburn,
Easements*, 163.

The right of way of necessity over the land of another is
always of strict necessity, and this necessity must not be
created by the party claiming the right of way. It never ex-
ists where a man can get to his property through his own land.
That the way through his own land is too steep or too narrow,
does not alter the case. It is only where there is no way
through his own land that the right of way over the land of
another can exist—*Ibid*. If one owns two closes, with a road
from former over the latter to the highway, and sells the latter
without reserving in the deed any right of way, if he has no

other, the use of the road over the other is a necessity. *Mc-Tavish* v. *Carroll*, 7 Md. 352. The same point raised here, that there is no way of necessity because the statute provides a way to be laid out by select men, was made in *Collins* v. *Prentise*, 15 Conn. 39, where Court held that the statute does not interfere with the common law way of necessity. The statute in Connecticut is similar to that in Maryland. *Pierce* v. *Selleck*, 18 Conn. 322; *Seeley* v. *Bishop*, 19 Conn. 134.

*George L. Van Bibber* and *S. A. Williams* for the appellee :

The fifth and sixth paragraphs of complainants' bill undertake to set up an easement of a right of way over "Mould's Success," defendant's farm, for the benefit of their tract, "Horner's Fishery." These contain three propositions :

1. An implied reservation in the deed from John Jay to Baker of a way of necessity over the "Mould's Success" farm for the benefit of "Horner's Fishery." This leads us to ascertain what constitutes a way of necessity. Washburn gives this definition : "A way of necessity can only be created over one of two parcels of which the *grantor was the owner*, when the same was conveyed or reserved." *Wash. on Easements and Servitudes*, 163. Bouvier defines it : "By necessity, as where a man purchases land accessible only over land of the vendor, or sells reserving land accessible only over land of the vendee, he shall have a way of necessity over the land which gives access *to his purchase or reservation.*" *Bouvier's Law Dictionary*—Way.

At the date of the deed to Baker, defendant's grantor, John Jay was the owner in fee of the farm called "Mould's Success," and was in possession of "Horner's Fishery" as tenant for life, and the plaintiffs were then the owners of the remainder in "Horner's Fishery" after the termination of his life estate by virtue of the wills of their two aunts, the Misses Maria and Frenetta Smith, and did not claim through their father. *Jay* v. *Michael*, 82 Md. 1; *Michael* v. *Jay*, 91 Md. 75. Being seized in fee of the "Mould's Success" farm, he sold and conveyed it to James B. Baker without reservation of any kind, and with

a warranty against all persons claiming by, through or under him, or by, through or under the plaintiffs in this case. The plaintiffs ask the Court to construe this deed as containing by implication a right of way over the "Mould's Success" farm for the benefit of the nine acres of "Horner's Fishery," because they say there being no access to "Horner's Fishery" from the highway except over "Mould's Success," it is a way of necessity.

This contention the defendant denies, because to make it a way of necessity to which "Horner's Fishery" is entitled, both adjacent tracts must at the date of the deed to Baker have been owned by John Jay. What is it the plaintiffs ask the Court to do? They ask the Court to say that John Jay, although he conveyed the farm he owned in fee, without express reservation of a way thereon, by legal implication reserved a way over it for "Horner's Fishery," not only for himself during the full term to which he was entitled to it, but also for strangers, namely, his two sons, who did not claim title through him, but through the wills of their aunts. Suppose John Jay had been entitled to "Horner's Fishery" for a term of years under a lease, and had sold the farm lying between it and the highway, which he owned in fee, could the Court have construed that deed as making a reservation of a way for any one's use or benefit, except that of the lessee or those claiming under him? We contend it could not and that there is no distinction in this regard between a term for years under a lease and a term for life, and that John Jay was not the owner of "Horner's Fishery" in the sense that by implication a servitude could be imposed upon "Mould's Success" in favor of "Horner's Fishery" beyond the tenure of Jay himself, and those claiming under him.

2. The latter part of the fifth paragraph is in these words: "That a road has existed to said 'Fishery' from the highroad and been used in connection with said 'Fishery' continuously for a period of more than fifty years by your complainants and those under whom they claim; that it is well defined and runs along the southern line of 'Mould's Success,' or between it and the farm adjoining, being the land of one William Smith."

If this allegation has any force it must mean that if there is no way of necessity, then Baker, the purchaser of "Mould's Success" farm, is charged with notice of a servitude over it of a way to the tract called "Horner's Fishery," because the owners and occupants of "Horner's Fishery" had for more than fifty years used a particular and well-defined road over "Mould's Success."

The defendant contends: (*a*) That the facts do not justify this statement of the bill; and (*b*) They absolutely preclude such a legal inference. The proof shows that the whole tract of land from Swan Creek to the highway, including "Horner's Fishery," was used as one entire farm. There is no evidence that there ever was any distinctive use made of the "Horner's Fishery" tract. There never had been any fences around it, nor were there any improvements on it. When Baker bought the farm there was no disclosure to him of any parcel of land between the highway and Swan Creek, which was not included in his purchase. Baker entered into possession of the whole tract from the creek to the highway, including "Horner's Fishery," with the knowledge of John Jay, and it was not for a long time afterwards that he learned of any claim being made by Jay to the tract called "Horner's Fishery." At the time Baker bought nothing was said to him about any right of way over his farm or of any reservations of any kind.

The facts are sufficient to estop the plaintiffs from the claim made by this latter part of the fifth paragraph of their bill. But it is not necessary to rely upon the doctrine of estoppel, because this Court has decided in a very exhaustive opinion, delivered by Judge Miller, that if the grantor intends to re-serve any right over the tenement granted, it is his duty to *re-serve it expressly* in the grant, and to this the only exception is of ways or easements of necessity. This rule is founded upon the maxim that a grantor cannot derogate from his grant. *Mitchell* v. *Seipel*, 53 Md. 269. See also *Eliason* v. *Grove*, 85 Md. 215; *Carbrey* v. *Willis*, 7 Allen, 364.

3. The complainants are not without remedy. They cannot be deprived of access to the highway. The laws of Maryland

make ample provision for the acquisition by the owner of land not binding on a highway, of a road to a highway, by a very simple and inexpensive method of condemnation. The defendant cannot stand in the way of plaintiffs' access to his property, but he is entitled to receive from the complainants proper compensation for such damages as he may sustain because of the servitude they put upon his property. It does not follow from the bare fact that a party is without a right of way except over the defendant's land, that he thereby acquires a right of way from necessity, according to the principles of the common law. *Brice* v. *Randall*, 7 G. & J. 353.

4. The complainants acquired title to "Horner's Fishery" through the wills of their aunts and not through their father, John Jay, consequently no implied reservation in a grant from John Jay, of "Mould's Success," descended to them. In holding "Horner's Fishery," they are as much strangers to John Jay as if they had been no kin to him. The only claim made by them in their bill to a right to the easement described, is through and under their *ancestor*, John Jay, who made the deed to Baker and by this claim they are bound, and they have not the right or privilege to claim such easement in any other way or through any other channel than they have charged in their bill.

PEARCE, J., delivered the opinion of the Court:

The appellants filed a bill in equity in the Circuit Court for Harford County to restrain the appellee from obstructing a right of way claimed by them over lands of the appellee, and this appeal is from a decree dissolving the preliminary injunction granted, and dismissing the bill.

The controversy arises upon the following state of facts:

Two sisters, Maria M. and Frenetta F. Smith, were the owners of two adjoining tracts of land in Harford County, one called "Mould's Success" containing 335 acres, and another called "Horner's Fishery" containing 9 acres. The former borders upon a public road. The latter projects into, and is wholly surrounded by the former except at two narrow

points where it touches the waters of Swan Creek, which is one of the boundaries of " Mould's Success," and the only access from any public road to " Horner's Fishery " is by a private way over " Mould's Success," leading from the public road to the buildings upon " Mould's Success " and used for more than 40 years, for access to these buildings and to " Horner's Fishery." The Misses Smith derived their title to " Mould's Success " by deed from Priscilla Presbury, in 1813, and to " Horner's Fishery " by inheritance from their brother, Samuel Griffith Smith, in 1845. They died seized of these two tracts in 1860, leaving wills by which they devised all their real estate, to John Jay, their brother of the half blood, for life, with remainders in fee to his two sons, the appellants in this case, who subsequently conveyed to their father their interest as remainder-men in " Mould's Success," with covenants of special warranty. John Jay, in 1889, conveyed " Mould's Success " to James B. Baker with covenants of warranty against all persons claiming through him or his sons, and in 1893, Baker conveyed the same to the appellee with like covenants of warranty. John Jay died in 1892. The appellee claimed that the conveyance from the appellants to their father embraced " Horner's Fishery," when they brought an action of ejectment for its recovery. This case is reported in 82 Md. 1, and was further reported in 91 Md. 75, their title being finally established in the latter case.

The way claimed is a way of necessity. The bill avers that " the only road or access from the highroad to ' Horner's Fishery' is over the land of the defendant sold as aforesaid by the ancestor of complainants, who reserved thereon an easement or right of way to and from his said land, known as ' Horner's Fishery,' to James Baker, and he to the defendant," and that a well-defined road running over " Mould's Success " along its southern line, had existed and been continuously used in connection with " Horner's Fishery " for over fifty years, by complainants and those under whom they claim, and that the defendant had obstructed said road by locking and chaining a gate thereon, and had refused their request to unchain and open the same.

The answer admitted plaintiff's title to "Horner's Fishery," the locking and chaining of the gate, and the refusal to open it, but denied the reservation of the right of way alleged in the bill, and denied the existence of any right of way to "Horner's Fishery," and referred to certified copies of the deeds from plaintiffs to their father, and from him to Baker, and from Baker to defendant, in none of which was there any mention of any such reservation, or of any such existing road. The answer averred that previous to Baker's purchase of "Mould's Success," in 1889, "Horner's Fishery" was always used as an undefined part of the farm called "Mould's Success," and that the road now claimed by the plaintiffs was only used for the purposes of *that farm*, and by permission of the *owners thereof*, and that the effect of the conveyances mentioned was to estop the plaintiffs from claiming such right of way. It further charged that the plaintiffs had an adequate remedy at law for any alleged trespass, and that the law provided the means of procuring a private way over "Mould's Success," if such way should be made to appear necessary and proper.

It appears from the testimony that an inlet of Swan Creek divides "Horner's Fishery" into two parcels, and that the private road described has two distinct branches, one leading to each of these parcels. One of the plaintiffs testified that he had known this road for forty-five years, that there was no other approach to "Horner's Fishery," and that the two branches of that road had been used for access to these two parcels ever since he could remember. The defendant testified that he remembered the road for thirty-five years, and that he never knew it to be used except as a private road for "the farm;" for the tenant of the farm hauling grain to the point at the foot of the lane leading down to the smaller parcel of "Horner's Fishery," and to haul fish from the point to Aberdeen. It appears from the testimony that part of "Horner's Fishery," was tillable land, and that, as its name indicates, seine hauling for fish was carried on there, and the testimony of the defendant would thus indicate that the "Hor-

ner's Fishery tract," in some way, enjoyed the use of both branches of this road, for the delivery at the point, or at Aberdeen, of the grain raised on the tillable land reached by the branch to the buildings on " Mould's Success," and for the hauling of fish landed at the point, from thence to Aberdeen. It is obvious, therefore, that if the plaintiffs are entitled either to a way by prescription, or to a way of necessity, none could be better adapted to the convenience of both parties, than the existing road with its two branches, and it is equally obvious if it be assumed that the plaintiffs are only entitled to a way of necessity, that defendant could not rightfully obstruct the only existing way until he had assigned plaintiffs another suitable way.    *Oliver* v. *Hook*, 47 Md. 310.    And in *McTavish* v. *Carroll*, 7 Md. 352, it was held that where one owns two closes with a road from the former over the latter to the highway, and sells the latter without reserving in the deed any right of way, he may, if he has no other, use the road over the latter as a way of necessity.

We think injunction the proper remedy in this case.    In *Amelung* v. *Seekamp*, 9 G. & J. 468, the bill did not aver that the way obstructed was the only way of the plaintiff, and did not state facts to satisfy the Court that irreparable mischief would ensue, and for that reason the injunction was denied. But this bill does charge that the way obstructed is the only means of access and that the plaintiff's property will be permanently injured and its value destroyed, if deprived of a right of way, and no argument is needed to show that such injury must be the necessary consequence of the position and condition of this property as hereinbefore stated.    In *Roman* v. *Strauss*, 10 Md. 89, it was held that one entitled to a right of way over a road or a street, may be protected in its enjoyment by an injunction restraining the erection of obstructions thereon, and an averment that the streets binding on the property were *nearly impassable* by reason of railroad tracks laid upon them, and that if the proposed railroad track should be laid across the alley over which the right of way existed, the value of the property would be *nearly destroyed*, was held suf-

ficient. In *Shipley* v. *Caples*, 17 Md.183, where plaintiff claimed
a prescriptive right of way over defendant's land from his own
land to a highway, and the bill stated he had no other outlet
except by a circuitous and inconvenient route over lands of
others, and by their permission, which could be at any time
withdrawn, the injunction was granted. We do not need
therefore to look beyond our own decisions, though should
we do so, we find them supported by such eminent Courts as
those of New Jersey and Michigan, and the doctrine is fully
sustained by Mr. Beach in his work on Injunctions, vol. 2,
p. 1016. Nor can the provision of our *Code*, Art. 25, secs.
100 to 117, relating to the acquisition of private ways, affect
the question. A private right of way over the land of another
must be founded either on grant, or prescription, which pre-
supposes a grant. *Pue* v. *Pue*, 4 Md. Ch. 386.

" If A conveys land to B, to which B can have access only
by passing over the land of A, there is an implied grant of a
way of necessity. And if A conveys land to B, leaving other
land of A to which he can have access only by passing over
the land granted, there is implied in the grant a reservation of
a way of necessity." *McTavish* v. *Carroll, supra,* 359. A
way of necessity thus must have its origin either in implied
grant, or in implied reservation from the grant, and however
created is part of the consideration passing between the par-
ties, and neither the grantee by implied grant, nor the grantor
in the case of reservation implied in the grant, can be deprived
of this consideration and be compelled to pay anew for the
way of necessity, under the provisions of the Code referred
to. It is no answer to the remedy sought by the plaintiff to
say that he can have a private road by paying for it. Those
provisions of the Code are not applicable to a case of *pre-
existing* right. They contemplate *compensation* to the party
through whose lands the road is sought and are applicable
only to an original demand, not based upon any pre-existing
and complete right. It was expressly held in *Collins* v. *Pren-
tice*, 15 Conn. 39, that a similar statute authorizing select men
to lay out private ways, does not change the common law re-

garding ways of necessity.  The Court there said there was nothing expressed in the statute, and nothing by implication, authorizing such construction, and that private ways may be needful and proper which are not strictly ways of necessity. In *Shipley* v. *Caples*, 17 Md. 183, JUDGE TUCK strongly intimates the same view, and if the constitutionality of our statute be assumed, as to which we express no opinion, we do not hesitate to adopt the construction given to the Connecticut statute.

Since the case of *Mitchell* v. *Seipel*, 53 Md. 269, in which the English and American authorities upon the doctrine of implied easements, both by grant and reservation, were most ably and exhaustively reviewed by the late JUDGE MILLER, it has been settled in this State, that ways or easements of necessity constitute an exception to the general rule that if the grantor intends to reserve any right over the tenement granted, it is his duty to reserve it expressly in the grant, but it is also settled that mere convenience or usefulness will not be sufficient.  The necessity must be imperative and absolute. In the later case of *Burns* v. *Gallagher*, 62 Md. 472, CHIEF JUSTICE ALVEY in referring to *Mitchell* v. *Seipel*, as laying down the correct rule, says: " It is only in cases of the strictest necessity, *and where it would not be reasonable to suppose that the parties intended the contrary*, that the principle of implied reservation can be invoked."   But to suppose that John Jay intended to relinquish all right of way to " Horner's Fishery," and to extinguish the right of way he was then actually using under a claim by prescription, and to suppose that Baker understood he intended so to do, would be a most unreasonable supposition, and one neither supported nor suggested by any evidence whatever.   Upon the evidence before us we cannot hesitate to find the existence of strict necessity for the way claimed to be reserved.

It was· suggested, however, that the warranty in the deed from John Jay to Baker would avoid the operation of the rule, but we cannot agree with this suggestion.   In *Carbrey* v. *Willis*, 7 Allen, 364, the Supreme Court of Massachusetts said,

"Where there is a grant of land by metes and bounds, without express reservation, and with full covenants of warranty against encumbrances, we think there is no just reason for holding there can be any reservation by implcation, *unless the easement is strictly one of necessity.*" And in *Brigham* v. *Smith*, 4 Gray, 297, the same Court said: " Is the rule affected by the fact that the grantor conveyed with deed of warranty ? We think not. If the way were expressly reserved, the covenants in the deed would apply to the premises granted, that is, an estate with a right of way reserved or carved out of the fee. With the right of way reserved in the present case, the law does for the parties the same thing, and the covenants apply to an estate with this way of necessity reserved." These decisions are in accord with the spirit and intent of our own decisions holding that a warranty cannot enlarge an estate, and that a covenant of warranty should only be held to assure the precise estate granted in the deed, the grant being qualified and restricted by the reservation, whether express or implied. *Universalist Society* v. *Dugan*, 65 Md. 470 ; *Hopper* v. *Smyser*, 90 Md. 384.

But it was further contended, conceding for the purpose of argument the correctness of the view we have just expressed, that the right of way reserved by legal implication in John Jay's deed to Baker, cannot be extended beyond his life-estate and made to enure to the benefit of the plaintiffs who do not derive their title from him, but through the wills of their aunts, the Misses Smith, and this position we think is sound. The only reservation necessary to be implied in John Jay's deed, was of an easement co-extensive in point of time with his estate. A right of way of necessity is suspended until the necessity for its use arises, and ceases when the necessity for its use ceases. *Pierce* v. *Sellock*, 18 Conn. 321; *Seeley* v. *Bishop*, 19 Conn. 134. Or, as expressed in *Oliver* v. *Hook*, 47 Md. 309, "The way of necessity is only provisional, for it is only brought into existence from the necessities of the estate granted (or reserved) and continues to exist only so long as there may be necessity for its use." As respects the estate of John Jay in "Horner's

Fishery," which was a life-estate only, the necessity for its use ceased with his death, and thereupon the right reserved by him was extinguished. *Whitlock's case,* 8 Coke's Rep. 70 and 71; *Hall* v. *Hall,* 66 Miss. 35.

But the plaintiffs were the owners under their aunts' wills, of the reversion both in "Horner's Fishery" and "Mould's Success," and while conveying to their father their reversion in "Mould's Success," they retained their reversion in "Horner's Fishery," and the same legal implication which imported into their father's deed to Baker, the reservation of a way of necessity to "Horner's Fishery" for the benefit of his life-estate, imports into their deed to him a like reservation of a way of necessity for the benefit of their reversion. Its use was suspended during their father's life-estate, which was served by his own reservation, but it was brought into being by the necessities of their estate, when their father's life-estate was extinguished, and their reversion fell into possession. *Oliver* v. *Hook, supra.* The defendant being in privity of estate with, and taking his title from their father, the reservation implied in favor of the plaintiffs against the father equally affects the defendant.

It results from what we have said, that the injunction should not have been dissolved, but should have been made perpetual. The decree of the Circuit Court will, therefore, be reversed, and the cause remanded that a decree may be made accordingly.

> *Decree reversed, with costs to the appellant above and below, and cause remanded.*

(Decided December 13, 1900.)