889 A.2d 403

Nancy R. STANSBURY

v.

MDR DEVELOPMENT, L.L.C.

No. 38, Sept. Term, 2005.

Court of Appeals of Maryland.

Jan. 9, 2006.

478

James J. Doyle, III (Rich & Henderson, P.C., on brief), Annapolis, for Petitioner/Cross–Respondent.

Cynthia E. Young, Annapolis, for Respondent/Cross–Petitioner.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, Judge.

This case arises from an action by a property owner to prove the existence of an easement by necessity over another's property. MDR Development, L.L.C. ("MDR"), respondent/cross-petitioner (hereinafter respondent), sought to build a footbridge across a waterway and a submerged portion of the property of Nancy R. Stansbury, petitioner/cross-respondent (hereinafter petitioner). It is argued that the existence of an easement by necessity was, and is, essential in order for respondent, and respondent's predecessors, to reasonably access a portion of respondent's property which is bordered on three sides by navigable water and on one side by petitioner's property. This issue reaches this Court after the Circuit Court for Anne Arundel County found there to be no easement by necessity [1] and the Court of Special Appeals, vacating

---

1. The trial court nonetheless declared that respondent had the right to build an access footbridge under a novel theory (stating that it was a case of first impression) best described as some kind of balancing of the equities. It stated in its memorandum opinion that:

the Circuit Court's judgment, held to the contrary. On May 17, 2005, Ms. Stansbury filed a petition for a writ of certiorari and MDR filed a conditional cross-petition; we granted certiorari as to both on July 18, 2005. *Stansbury v. MDR Dev., L.L.C.*, 388 Md. 97, 879 A.2d 42 (2005).

Ms. Stansbury's petition for writ of certiorari presents two questions for our review:

"I. Is an easement by necessity properly granted for the purpose of providing access to a portion of respondent's property where the remaining portion is occupied and is accessible by road?

"II. Is an easement by necessity properly granted to a portion of respondent's property where access to that portion is available by navigable water?" [2]

Based on the facts of the case at bar, we answer both of Ms. Stansbury's questions in the affirmative, and therefore affirm the decision of the Court of Special Appeals. Under proper circumstances, such as those existing here, an easement by necessity exists to access a portion of a person's property which is inaccessible except through another's property, although there is access via navigable water. Because of our

"In conclusion, the [trial] Court is presented with a situation in which Plaintiff can articulate how the construction of a pedestrian walkway will promote the reasonable use and enjoyment of his property. Defendant, on the other hand, only speculates as to how the proposed footbridge will affect her interests. *Weighing these considerations*, the Court finds that Plaintiff's proposed footbridge will not unlawfully interfere with the Defendant's interest in a portion of the land beneath the waters in the channel." [Emphasis added.] [Footnote omitted.]

In the absence of an easement, implied or express, weighing of "these considerations" is completely irrelevant. If a party does not have a property right via an easement or other recognized right, the fact that an interloper's use may be reasonable or that the property owner cannot express how infringement will affect her interests, has absolutely no place in property law. One of the most important incidents of ownership of private property is the right to exclude others. Without that right it would not be "private" property.

2. Ms. Stansbury raises several other issues in her brief which we shall not address as they were not presented in her petition for writ of certiorari.

determination it is not necessary to address MDR's conditional cross-petition.

## I. Facts and Procedural History

We adopt the facts as stated by Judge Kenney, writing for the Court of Special Appeals in its decision below:

"This case concerns property located in the Pleasant Plains subdivision in Anne Arundel County, Maryland and shown below.

"Our primary focus is on lots 178, 179, 9A, and 10A, which, along with the other lots shown, were platted prior to the creation of the channel.[3] As platted, lots 179 and 10A shared a common lot line, as do lots 178 and 9A. The common lot lines are below and approximately midway [through] the channel. The depth of the channel varies with

---

3. The diagram provided by the parties in the record indicates a straight man-made channel between the properties in question as it is shown above. However, an August, 2002, photograph included in the record shows a meandering, natural appearing, stream. The location of the channel with its straight lines as shown on the diagram, does not appear now to actually exist (if it ever did), on the ground. Ms. Stansbury describes the water course as both a "canal" and "tidal waterway." It is not clear whether the straight "channel" shown on the plat has ever actually existed. The nature of the waterway, i.e., natural or man made, does not appear to be an issue in dispute in this case.

the tide, but it is stipulated to be navigable. The channel provides the eight lots shown above with water access to Pleasant Lake and, through the lake, to the Chesapeake Bay.[4]

"On April 2, 1936, James Edward Stansbury, Ms. Stansbury's father, acquired fee simple title to these four lots, subject to a life estate in Mallee B. Moore, Ms. Stansbury's maternal grandmother. At the time, Mr. Stansbury lived on Lot 7A, and in the mid 1950s he dredged the channel. After the channel was created, a footbridge, approximately 100 to 150 feet in length, was constructed over the channel in lots 9A and 178. Laura Stansbury, Ms. Stansbury's mother, who resided on Lot 7A, used the footbridge to visit and care for her mother, Mallee B. Moore, who resided on Lot 179. The middle portion of the footbridge could be removed to allow small boats to traverse the channel and seek safe harbor during storms.

"According to Ms. Stansbury, the Stansburys had little reason to utilize the footbridge after Mallee B. Moore's death in 1973, and it fell into a 'state of disuse.' The Stansburys, who lived on Lot 7A, and who had access to Lot 10A across lots 8A and 9A, made little use of Lot 10A as the result of extensive erosion. She described Lot 10A as a 'rubble filled marshland with an old pier that extends into the Chesapeake Bay.'

"James Edward Stansbury died testate on March 25, 1977; Ms. Stansbury, Laura Stansbury, and Ms. Stansbury's brother, James Elijah Stansbury, were the legatees of Mr. Stansbury's property. On December 12, 1984, Laura Stansbury, individually and as personal representative of her husband's estate, entered into an Agreement of Distribution with her children to convey title to lots 178, 179, 9A, and 10A to the children as tenants in common as a part of

---

4. "Lots 179 and 10A have direct access to the lake and lots 10A and 9A, along with the other bay front lots, have direct access to the Chesapeake Bay." *Stansbury v. MDR Dev., L.L.C.,* 161 Md.App. 594, 599 n. 3, 871 A.2d 612, 615 n. 3 (2005).

their inheritance. The children, in turn, would determine how the lots would be divided between them. For whatever reason, Laura Stansbury did not abide by the agreement; she never conveyed the lots to her children.

"On December 30, 1986, Ms. Stansbury, who had resided on Lot 179 since 1983, executed a deed transferring her interest in lots 178 and 10A to her brother, and he executed a deed transferring his interest in lots 179 and 9A to her. Later, because Laura Stansbury had not transferred the lots to the children, Ms. Stansbury filed a complaint to compel her mother to execute the deeds. Michael R. Robyler was appointed as a trustee to complete the transfer, and in March 1987, Ms. Stansbury and her brother were deeded fee simple title to their respective lots, as contemplated by the December 30, 1986, conveyances.

"On February 22, 1988, James Elijah Stansbury mortgaged his two lots, 178 and 10A, to secure a $200,000 note to Francis C. and Shirley C. Cole. He defaulted on the note, and, in 1995, the property was acquired at a foreclosure sale by David L. and Charlotte Caldwell and James L. and Margaret F. Thrift (hereinafter collectively 'Caldwell').

"When David Caldwell visited the property prior to the foreclosure sale, he observed an uninhabitable house on Lot 178, the pier located on Lot 10A, and the footbridge. He testified that the footbridge was in 'passable' condition at that time, and that Ms. Stansbury had escorted him across the footbridge during his visit. Later, when he requested her permission to repair the footbridge to facilitate travel to Lot 10A, Ms. Stansbury would not agree. She expressed interest in purchasing lots 178 and 10A from Caldwell, but no agreement was reached. Sometime in 1997, an 'eight to twelve' foot long portion from the center of the footbridge was removed and a 'no trespassing' sign was posted on the portion of the footbridge located on Lot 9A.

"In 1997, Caldwell obtained a variance from Anne Arundel County to construct a residence on Lot 178. On April 20, 1998, Caldwell entered into an agreement with the County to treat lots 178 and 10A as one lot. The agree-

ment, which was recorded among the land records of Anne Arundel County, provided that

all interior lot lines connecting [lots 178 and 10A] shall no longer be considered lot lines for any purposes, including those set forth in the Anne Arundel County Code; it being the intent of both parties that the aforementioned lot shall be considered now and forevermore as one single lot or parcel of ground and that all other requirements of law now in full force and effect or hereinafter effective shall be applicable as if such property is one parcel of ground.

"On October 13, 1998, in a document entitled Declaration of Easement Conditions and Restrictions, which was recorded in the land records of Anne Arundel County, Caldwell agreed not to construct any structure on Lot 10A, with the exception of a footbridge after obtaining all necessary Federal, State, and local permits for its construction. As proposed, the footbridge would extend across the channel from Lot 178 directly to Lot 10A. The right to construct the footbridge is at the heart of this controversy.

"In 1999, Caldwell initiated a two-count complaint against Ms. Stansbury, asserting entitlement to an easement across a portion of lot 9A in order to gain access to 10A. The complaint sought declaratory relief in addition to monetary damages in the amount of $100,000. Michael D. Reisinger, sole owner of MDR, had first visited lots 178 and 10A in 1996 or 1997. MDR purchased the lots from Caldwell on October 15, 2001. On October 25, 2001, MDR was substituted as the party plaintiff.

"Trial was held on September 27, 2002, and November 1, 2002. In addition to the evidence summarized above, Ms. Stansbury offered evidence as to how her property, lots 179 and 9A, would be adversely affected by the construction of the footbridge. She also testified that a footbridge would obstruct navigation in the channel and lower the property values of the riparian owners.

"John Dowling, admitted as an expert witness 'in the fields of title searching, real property issues, and surveying,'

testified that in 1807 a land patent was issued to the land known as Grammer's Pleasant Plains. According to Dowling, as a result of that land patent, Ms. Stansbury is the 'supreme' title holder of those portions of lots 179 and 9A beneath the channel over which the footbridge would cross.

"On August 19, 2003, in a memorandum opinion and order, the circuit court determined that

> [MDR] is not entitled to the declaration of an easement over [Ms. Stansbury's] property to facilitate pedestrian travel between Lots 178 and 10A. [MDR] is entitled to construct a footbridge-subject to all Federal, State and local regualtions [sic]—between Lots 178 and 10A free from any unsubstantiated claim by [Ms. Stansbury] that said footbridge will interfere with her property rights to a portion of land submerged beneath the water in the channel.

Ms. Stansbury noted [a] timely appeal and MDR cross-appealed."

*Stansbury v. MDR Dev., L.L.C.,* 161 Md.App. 594, 599–603, 871 A.2d 612, 614–17 (2005).

The Court of Special Appeals vacated the Circuit Court for Anne Arundel County's judgment that: (1) MDR was not entitled to an easement over Ms. Stansbury's property and (2) MDR was entitled to construct a footbridge pursuant to a balancing of equities. Instead, the Court of Special Appeals held that "MDR is entitled to a declaration establishing [5] an easement by necessity, subject to government regulation, for a pedestrian walkway in order to reasonably use and

---

5. Technically an easement by necessity exists by reason of the facts and circumstances present in a situation. It exists without a court order. It exists by operation of law. When disputes arise as to its existence, however, a court action is the proper way to resolve the disputes. What a court does is to affirm (or not) that an easement by necessity already exists. The court does not "create" or "establish" such an easement. In some circumstances—if an easement by necessity is determined to be in existence—a court may "locate" that pre-existing easement at a particular location. But courts generally do not "create" or "establish" easements; they recognize or affirm (or not) easements.

enjoy Lot 10A. . . ." *Stansbury,* 161 Md.App. at 619, 871 A.2d at 627.

## II. Discussion

Ms. Stansbury asserts that: (1) an easement by necessity does not exist for the purpose of providing access to an inaccessible portion of MDR's property where the remaining portion of MDR's property, particularly the portion that will contain a residence, is accessible by a public road; and (2) that in addition, an easement by necessity should not be recognized as to that inaccessible portion of MDR's property where there is access to that portion via navigable water. We disagree as to both assertions.

### A. Easements by necessity.

It is first necessary to outline the doctrine of easements by necessity in Maryland before we apply it to the circumstances of the case *sub judice.* An easement is the "non-possessory interest in the real property of another" and arises through express grant or implication. *Boucher v. Boyer,* 301 Md. 679, 688, 484 A.2d 630, 635 (1984) (citing *Condry v. Laurie,* 184 Md. 317, 320, 41 A.2d 66 (1945)); *Calvert Joint Venture # 140 v. Snider,* 373 Md. 18, 39, 816 A.2d 854, 866 (2003). In *Boucher,* Judge Cole, writing for the Court, enumerated the several different ways in which easements by implication may be created: ". . . such as by prescription, **necessity,** the filing of plats, estoppel, and implied grant or reservation where a quasi-easement has existed while the two tracts are one." 301 Md. at 688, 484 A.2d at 635 (citations omitted) (emphasis added). Our focus is on easements by necessity.[6] Easements by necessity, also called ways of necessity, are a "special class of implied grants and have been recognized in this State for a good many years." *Hancock v. Henderson,* 236 Md. 98, 102, 202 A.2d 599, 601 (1964); *Shpak*

---

6. For an in-depth discussion of Maryland case history involving the implied easement doctrine see *Calvert Joint Venture # 140,* 373 Md. at 39–47, 816 A.2d at 866–870.

*v. Oletsky,* 280 Md. 355, 360, 373 A.2d 1234, 1238 (1977). As we stated in *Calvert Joint Venture # 140,* "[i]mplied easements by necessity arise from a presumption that the parties intended that the party needing the easement should have access over the land." 373 Md. at 39–40, 816 A.2d at 866 (citing *Greenwalt v. McCardell,* 178 Md. 132, 136, 12 A.2d 522, 524 (1940)).

Quoting *Mullins v. Ray,* 232 Md. 596, 599, 194 A.2d 806, 807–08 (1963), the *Hancock* Court stated that easements by necessity typically arise: " 'Where a grantor conveys a tract of land which has no outlet to a public highway except over his remaining land or over that of a stranger, a way of necessity over the grantor's remaining property will be implied. *Condry v. Laurie,* 184 Md. 317, 321, 41 A.2d 66[, 68 (1945) ].' " *Hancock,* 236 Md. at 102, 202 A.2d at 601; *see also Greenwalt,* 178 Md. at 138, 12 A.2d at 525 ("At common law implied easements of necessity are recognized on the theory that when an owner of land grants a part of it surrounded by his own, he impliedly grants thereby a way to reach it, so that the land will not be rendered unfit for occupancy."); *Zimmerman v. Cockey,* 118 Md. 491, 84 A. 743, 745 (1912); *Jay v. Michael,* 92 Md. 198, 48 A. 61, 63 (1900); *Mitchell v. Seipel,* 53 Md. 251, 267 (1880) ("[W]here the owner of a close surrounded by his land grants the close to another without any express reservation of a way, if there is no other means of getting to the close, the law will imply a way over the grantor's land as incident to the grant."); *Oliver v. Hook,* 47 Md. 301, 309 (1877) ("[W]here one party deeds to another a parcel of land surrounded by other lands, and there is no access to the land thus conveyed, except over the lands of the grantor, the latter gives the grantee a right of way by implication, over his land to that conveyed by him."); *McTavish v. Carroll,* 7 Md. 352, 359 (1855) ("Where a man owns two closes, A and B, with a road from A over B, to the highway, and sells close B, without reserving, in the deed, any right of way, if he has no other road, he may use the one over B as a way of necessity.").

■■■ In *Condry*, the Court expounded upon the doctrine of easements by necessity, stating that "[t]he doctrine is based upon public policy, which is favorable to full utilization of land and the presumption that parties do not intend to render land unfit for occupancy." 184 Md. at 321, 41 A.2d at 68. We do not, however, affirm the existence of these easements lightly, as "[i]t is recognized, however, that grants of easements by implication are looked upon with jealousy and are construed with strictness by the courts." *Id.* It must also be recognized that "[a] way of necessity ceases to exist when the necessity for it ceases." *Id.* Finally, "[m]ere inconvenience will not be sufficient to justify the finding of a way of necessity. It is only in [the] case of strictest necessity, where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied easement can be invoked." *Id.* at 322, 41 A.2d at 68 (citing *Zimmerman*, 118 Md. at 496, 84 A. at 745; *Burns v. Gallagher*, 62 Md. 462, 472 (1884)). Nonetheless, "Maryland has accepted the general rule that where there is a grant of land without any express reservation of an easement, a reservation is implied if the easement is reasonably necessary for the fair enjoyment of the property." *Greenwalt*, 178 Md. at 138, 12 A.2d at 525 (citing *Duvall v. Ridout*, 124 Md. 193, 92 A. 209 (1914); *Mitchell*, 53 Md. at 272).[7]

■■■ It is also relevant that easements by necessity must be created at the time of the initial grant of the property. As we stated in *Hancock:*

"If the way of necessity was not implied at the time of the grant ..., it cannot be established by a subsequent necessity. *Feldstein v. Segall*, 198 Md. 285, 294, 81 A.2d 610 [ (1951) ]; 28 C.J.S. Easements § 35 b. In other words, the

---

7. There is a distinction between implied reservations of ways of necessity and implied grants of ways of necessity. *See Calvert Joint Venture # 140*, 373 Md. at 39–47, 816 A.2d at 866–870, *supra* and cases therein cited. Because of the nature of the relevant conveyances in this case—the exchange of deeds between Ms. Stansbury and her brother—the differences are not relevant, in that both exist under the present circumstances. The brother both impliedly reserved a way and was impliedly granted a way by Ms. Stansbury.

necessity must be determined from the conditions as they existed at the time of the conveyance.... Hence a remote grantee of land not being used at the time of severance may nevertheless, when the use becomes necessary to the enjoyment of his property, claim the easement under his remote deed.... This rule is consonant with the generally held view that non-use alone is not sufficient to extinguish a way by necessity. *Knotts v. Summit Park Co.*, 146 Md. 234, 126 [A.] 280 [ (1924) ]."

*Hancock*, 236 Md. at 104–05, 202 A.2d at 603 (some citations omitted). 3 Herbert T. Tiffany, The Law of Real Property, § 793 (3rd ed.1939, 2004 Supp.) concurs and adds additional commentary:

"The intent to create the easement is thus deemed to be shown by the type of transaction involved, and no other evidence is necessary to establish the intent of the parties to create a way of necessity. *An easement by necessity also may be created where there are simultaneous conveyances by a common grantor, and one of the conveyed lots is landlocked and inaccessible, in which case an easement over the other simultaneously conveyed lot to benefit the inaccessible lot may be implied.*" (Emphasis added.) (Footnotes omitted.)

■ The prerequisites to the creation of an easement by necessity can be summed up in three parts: (1) initial unity of title of the parcels of real property in question; (2) severance of the unity of title by conveyance of one of the parcels; and (3) the easement must be necessary in order for the grantor or grantee of the property in question to be able to access his or her land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement. *See also* 28A C.J.S. *Easements* § 93 (2005).

#### B. Easement by necessity to reach an unaccessible portion of one's property, where the remaining portion is accessible by public road.

■ Ms. Stansbury argues that the Court of Special Appeals erred in recognizing the existence of an easement by

necessity to MDR over Lot 9A in order for access to a portion of its property, Lot 10A, which is surrounded on three sides by navigable water and on one side by Ms. Stansbury's property. Ms. Stansbury asserts that because a portion of MDR's property, Lot 178, where the residence will be located, has access to a public road, there is no need for MDR to have an easement by necessity. Ms. Stansbury's argument rests on her assertion that MDR's predecessor in interest to lots 178 and 10A, Caldwell, consolidated the lots into one lot, which now, as a single entity, has access to a public road. It is contended that the consolidation of the lots into a single lot ended whatever necessity existed. We do not need to consider whether the Agreement entered into by Caldwell actually "consolidated" lots 178 and 10A as it is not determinative as to whether an easement by necessity exists in this situation. The parcel of land identified as lot 10A, consolidated or not, remains inaccessible except over Ms. Stansbury's property, lots 179 and 9A. Thus, without a way of necessity the public policy of full utilization of land is frustrated. Additionally, we do not presume that the parcel of land identified as Lot 10A was at the time of the transfer in ownership between Ms. Stansbury and her brother granted with the intent that it be "unfit for occupancy," which would be the result for that area identified as Lot 10A, should we decline to recognize that an easement by necessity exists over lot 179 or 9A, or both. *Condry,* 184 Md. at 321, 41 A.2d at 68.

The unity of title in the affected parcels existed until 1986, when Ms. Stansbury executed a deed transferring her interests in lots 178 and 10A to her brother, and he in turn executed a deed transferring his interests in lots 179 and 9A to her. It was at this time, when the lots were first titled separately, that unity of title to all the lots was severed and an easement by necessity to Lot 10A arose. While Lot 178 had access to a public highway, Lot 10A was conveyed as a property inaccessible except through Ms. Stansbury's Lot 9A (and perhaps Lot 179 as well). It is reasonable to presume that Ms. Stansbury and her brother intended that he would have access to Lot 10A, otherwise it would be unfit for

occupancy. This was the time of the initial severance of the unity of title of the then four lots, and therefore, an easement by necessity was clearly implied at that time. *See Hancock,* 236 Md. at 102, 202 A.2d at 601; *Greenwalt,* 178 Md. at 136–38, 12 A.2d at 522–25; *Zimmerman,* 118 Md. 491, 84 A. 743, 745; *Jay,* 92 Md. 198, 48 A. 61, 63; *Mitchell,* 53 Md. 251; *Oliver,* 47 Md. 301; *McTavish,* 7 Md. 352. In addition, it was reasonably necessary for the "fair enjoyment of the property" that an easement by necessity be implied over Lot 9A (or Lot 179 or both under the circumstances here present) in order for the owner of Lot 10A to have access to the property. *See Greenwalt,* 178 Md. at 138, 12 A.2d at 525.

It is evident that the way of necessity was "implied at the time of the grant." *Hancock,* 236 Md. at 104–05, 202 A.2d at 603. The conditions at the time of the transfer of interests between Ms. Stansbury and her brother indicated the existence of an implied easement over Lot 9A for access to Lot 10A. Thus, even though Ms. Stansbury's brother may not have used an easement during his possession,[8] nor may have Caldwell,[9] the *Hancock* Court has made clear that "non-use alone is not sufficient to extinguish a way by necessity." *Id.* 236 Md. at 105, 202 A.2d at 603 (citing *Knotts v. Summit Park Co.,* 146 Md. 234, 126 A. 280 (1924)). Easements by necessity normally cease to exist when the necessity for the easement ceases. *Hancock,* 236 Md. at 105, 202 A.2d at 603. In the case *sub judice* it is evident that the necessity for the easement still exists.

It is clear that the situation of two *separate* lots, Lot 178 and Lot 10A, requires that an easement by necessity exist over lots 179 or 9A, or both, in order to facilitate access to Lot

---

**8.** It is not clear whether Ms. Stansbury's brother made use of the then-existing footbridge between Lot 9A and Lot 178 to access Lot 10A at that time. However, the footbridge did exist and was traversable at the time.

**9.** The record indicates that Caldwell walked across the then-existing footbridge with Ms. Stansbury when he first purchased lots 178 and 10A.

10A. Ms. Stansbury contends, however, that the consolidation of the lots into a single lot results in one lot which has access to a public road, and therefore there is no necessity for an easement. We find this distinction to be inapplicable because the necessity still exists whether the property is considered one lot or two.

Assuming, *arguendo,* that the "consolidation" resulting from the Agreement does create one piece of property for all purposes, the problem still remains that there is no access to the area identified on the plat as Lot 10A without crossing either lots 179 or 9A, or both. All four lots, i.e., all of the parcels of land (lots 178, 179, 9A and 10A), meet at a single geometric point. Lot 178 is catty-cornered to Lot 10A. It is impossible for a person to cross from Lot 178, over that geometric point, to the parcel known as Lot 10A without intruding upon lot 179 or 9A, or both. This fact has existed since the unity of title was severed by the exchange of deeds between Ms. Stansbury and her brother. Under these circumstances, it is necessary to cross over Ms. Stansbury's property, lot 179 or 9A, or both, in order for MDR to access that parcel of land known as Lot 10A, and therefore, an easement of necessity exists by implication arising at the time of the exchange of deeds between Ms. Stansbury and her brother.

■ Ms. Stansbury also argues that there is a conservation easement on Lot 10A which precludes any use of the property for which an easement by necessity would be required. In October, 1998, Caldwell recorded a Declaration of Easement Conditions and Restrictions, in which he agreed, in exchange for the creation of a Conservation Easement over portions of lots 178 and 10A, to not construct any structure upon the Conservation Property with the exception of a footbridge for access to Lot 10A. Lot 10A consists primarily of water and wetlands, with a small portion of serviceable land from which a pier extends into the Chesapeake Bay. All of that serviceable land, water and wetlands has been designated Conservation Property. Ms. Stansbury contends that the

ordinary purposes for which a lot can be used is a consideration that must be taken into account by the court when deciding whether there is an implied easement by necessity. *See* Tiffany, *supra,* at § 793. It is her assertion that, because the parcel known as Lot 10A cannot have any non-water related structures built on it due to the Conservation Easement, there is no ordinary use for the property which necessitates an easement to access the property.

■■■ The Declaration of Easement Conditions and Restrictions entered into between Caldwell and Anne Arundel County specifically states that "*[t]he construction of a pier* [footbridge] *for access to Lot 10A is allowable,* with the appropriate federal, state and county permits." [Emphasis added]. The fact that MDR cannot at present build any structures other than a footbridge on Lot 10A does not negate the necessity of an easement for access to the property. Agreements, even agreements as to easements, are subject to modification or even termination if the parties so agree. The limitations on the use of the land, if any, that now exist may not remain. Moreover, even if the limitations remain, ordinary use and enjoyment of the property can be as simple as walking amongst the wetlands, along the waterfront of the Chesapeake, and would certainly encompass the exercise of riparian rights, including access to, maintenance (perhaps replacement) and use of the pier extending into the bay. Subject to obtaining the appropriate federal, state and county permits, MDR may build the footbridge from Lot 178 over lots 179 or 9A, or both, to access Lot 10A.

### Other jurisdictions.

Ms. Stansbury, in her brief, examines numerous out-of-state cases, in which she asserts that the courts "applied a strict necessity standard applicable for a[n] easement by necessity and have rejected the creation of an easement by necessity to a portion of a property where any part of the property abuts or has direct access to a public road." All of these cases, however, are distinguishable, based on their particular facts, from the case *sub judice.*

In *Gowan v. Crawford,* 599 So.2d 619, 620–21 (Ala.1992), the Supreme Court of Alabama found there to be no easement by necessity across a neighbor's property when a creek extending across the defendants' property made "access from the defendants' house to the adjacent public road [ ] 'extremely difficult.' " The *Gowan* court stated that "the trial court could not grant [recognize] an easement by necessity, because there is no proof in the record of unity of ownership of the two parcels" [10] and "[f]urthermore . . . the defendant's property is adjacent, on the south side, to a public road." *Id.* at 622. In the case *sub judice* it is not just "difficult" for MDR to access Lot 10A, it is impossible to do so without crossing Ms. Stansbury's property. In addition, the record indicates that there was unity of ownership of all of the parcels in question prior to the severance of title that created the easement by necessity.

In a number of the other foreign cases cited by Ms. Stansbury, it was possible for the property owner seeking an easement by necessity to reasonably physically access the portion of their property for which they seek the easement without crossing another's property. *See Miskoff v. Cross Fox Condominium Association, Inc.,* 460 So.2d 987, 988 (Fla. Dist.Ct.App.1984) ("Appellee occupies an L-shaped parcel which has, without the easement, direct access to and from two streets and an alley. An easement of necessity will not be found in favor of property that has a way of ingress and egress apart from the easement."); *McConnell v. Satterfield,* 576 N.E.2d 1300, 1302 (Ind.Ct.App.1991) ("The [appellants] admit that they are not landlocked and that they have means of access to their lot from the southern side which fronts on a public highway."); *Gosney v. Glenn,* 163 S.W.3d 894, 901 (Ky.Ct.App.2005) ("By [appellant's] own testimony, there is another access way to his property."); *Marrs v. Ratliff,* 278

---

**10.** "[I]t has been stated that '[o]riginal unity of ownership of the dominant and servient tenements is always required for an easement of necessity.' " *Gowan v. Crawford,* 599 So.2d 619, 621 (Ala.1992) (quoting *Bull v. Salsman,* 435 So.2d 27 (Ala.1983) (quoting *Helms v. Tullis,* 398 So.2d 253, 255 (Ala.1981))).

Ky. 164, 174, 128 S.W.2d 604, 609 (1939) ("[T]he facts of the instant case do not bring [appellees'] claim within the rule as to the presumption of an implied grant of a passway upon the ground of necessity of claimant therefor, as it is shown there was a roadway always available to these upper land owners, along the branch, by using the public branch road."); *Canei v. Culley*, 179 W.Va. 797, 798, 374 S.E.2d 523, 524 (1988) (per curiam) ("[A]nother means of access to the property exists, and the fact that such means is less convenient or more expensive to develop is immaterial.").

In *Burling v. Leiter*, 272 Mich. 448, 457–59, 262 N.W. 388, 391 (1935) the court found that "a way of necessity could not exist because the entire front of the lot conveyed was upon . . . a public highway, so there was no necessity for a way over the plaintiff's land to reach the public highway." The *Burling* court also cited to *Kripp v. Curtis*, 71 Cal. 62, 11 P. 879, 880 (1886) which stated, "it is only where there is no way through his own land that a grantee can claim a right over that of his grantor" and *McDonald v. Lindall*, 3 Rawle 492, 495 (Pa.1827) which stated that, "[i]t is only where there is no way through his own land, that the right of way over the land of another can exist."

The court in *Phillippi v. Knotter*, 748 A.2d 757, 761, 2000 PA Super. 71 (2000) found the fact that only one parcel of property was conveyed to be the principal factor in determining whether there was an easement by necessity. From the time of that conveyance, and consequent original severance, there was access from a portion of the property to a public highway. *Id.* Whereas, in the case *sub judice*, lots 178 and 10A were conveyed as two separate parcels and at the time of their severance in title from one another and lots 179 and 9A, only Lot 178 had access to a public highway. It is impossible, as discussed *supra*, for MDR to access Lot 10A over the geometric point at which it meets Lot 178 without crossing over one, or both, of Ms. Stansbury's lots.

An easement by necessity exists over Ms. Stansbury's property, lots 179 or 9A, or both, in order to facilitate access for

MDR to Lot 10A. This easement meets the requirements addressed *supra:* (1) there was initial unity of title of lots 178, 179, 9A, and 10A; (2) unity of title was severed by conveyance of the lots when Ms. Stansbury and her brother transferred their interests as tenants in common to each other; and (3) the easement was necessary, at the time of the severance of title, in order for Ms. Stansbury's brother to be able to access Lot 10A and exists today.

### C. Easement by necessity to property accessible by navigable water.

Ms. Stansbury argues that Lot 10A is accessible via the navigable water of the channel as well as the Chesapeake Bay and therefore, is not landlocked and an easement by necessity is not required to access the property. Ms. Stansbury also states that the limited purposes, pursuant to the Conservation Easement, for which Lot 10A may be utilized, renders access via navigable water sufficient for the ordinary use of the property. We discussed the impact of the Conservation Easement upon the ordinary use of Lot 10A *supra* and thus, will only address the effect of access by navigable water upon the establishment of an easement by necessity.

This Court directly addressed the impact of access to navigable water for property in the context of easements by necessity in *Hancock.* Prior to *Hancock,* this Court in *Woelfel v. Tyng,* 221 Md. 539, 544, 158 A.2d 311, 313 (1960) had stated that "it has been held in some cases that a way of necessity cannot be implied over contiguous lands of a grantor, where there is access over navigable waters." Addressing *Woelfel,* Judge Marbury, writing for the *Hancock* Court, opined:

> "The more modern view, for sound reasons of social policy, is that a way of necessity may exist over the land of the grantor even though the grantee's land borders on a waterway, if the water route is not available or suitable to meet the requirements of the uses to which the property would reasonably be put."

236 Md. at 103, 202 A.2d at 602. In the case *sub judice* the ordinary and reasonable use of Lot 10A is access to the pier extending into the Chesapeake Bay.

We concur with the Court of Special Appeals' holding, in which the court stated:

> "We hold, based on the circuit court's findings that the only access to Lot 10A by the owners of Lot 178 is 'by small boat or walking through the channel at low tide' and 'that a pedestrian walkway is necessary for the reasonable use and enjoyment of [MDR's] riparian rights in the Chesapeake Bay,' that MDR is entitled to an easement by necessity over Ms. Stansbury's submerged property in order to access Lot 10A." [11]

*Stansbury*, 161 Md.App. at 617, 871 A.2d at 625. Whether the use of the pier is for docking a boat, fishing, crabbing or simply enjoying the scenery is not dispositive of the issue. What is dispositive is that access via water is not suitable access to Lot 10A. The easement by necessity being sought is a footbridge. A footbridge constitutes a minimum impact to Ms. Stansbury's property, so that MDR may access Lot 10A by foot from its catty-cornered situated Lot 178. It is not suitable nor reasonable for MDR to travel to a public launching ramp, acquire a boat, and traverse the Chesapeake Bay in order to gain access to Lot 10A.

### III. Conclusion

We find that under the facts here present, an easement by necessity exists for the purpose of providing access to Lot 10A even though Lot 178 is accessible via a public highway, Lot 10A's access to navigable water notwithstanding. Thus, we shall affirm the Court of Special Appeals' judgment that MDR is entitled to a declaration recognizing that an easement by necessity exists over either lot 179 or 9A, or both, subject to

---

11. Walking through the channel would also encroach on Ms. Stansbury's land at the same geometric point where the four lots meet. Additionally, depending upon bottom conditions (in the photographs it appears to be all mud) and weather conditions (in the winter, walking could be extremely difficult.

government regulation. This includes the right to maintain pedestrian access via a footbridge between lots 178 and 10A, in order to reasonably use and enjoy Lot 10A.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONERS.**