51 A.3d 573

**Barry K. DOWNEY, et al.**

v.

**Nicholas SHARP.**

**No. 19, Sept. Term, 2011.**

Court of Appeals of Maryland.

Aug. 23, 2012.

Reconsideration Denied Sept. 20, 2012.

Jeffrey P. Reilly (Miles & Stockbridge P.C., Towson, MD; Scott R. Wilson of Miles & Stockbridge P.C., Baltimore, MD), on brief, for Petitioners.

Karen D. Amos, Ellicott City, MD, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

This case concerns an arbitration award under the Maryland Uniform Arbitration Act, Maryland Code (2006 Repl.Vol., 2011 Supp.), §§ 3–201 *et seq.* of the Courts and Judicial Proceedings Article. More specifically, the issue is whether the Court of Special Appeals erred when it vacated the award, overturned the arbitrator's denial of an easement, and directed that an easement by necessity be located over the petitioners' land.

I.

The conflict currently before this Court relates to an arbitration award dated December 22, 2008. The petitioners, Barry and Rhonda Downey, filed a petition in the Circuit Court for Howard County to confirm the arbitration award, and the respondent, Nicholas Sharp, filed a motion to vacate the same.[1] The arbitration award rejected Sharp's claim of an express easement over the adjacent property of the Downeys. Sharp further contended that, even in the absence of an express easement, he was entitled to an implied easement by necessity over the Downeys' property because, without such an easement, his property would be landlocked and inaccessible. The arbitration award also rejected Sharp's claim of an implied easement by necessity.

The evidence, submissions, arguments of counsel, etc., at the hearing before the arbitrator are not contained in the record because the parties agreed not to have the arbitration proceedings transcribed. In addition, the record does not include all of the exhibits submitted to the arbitrator. The arbitration proceedings record before this Court contains only the arbitration award, including amendments to the award, and some documentary evidence, such as copies of the original deeds and easements. The thirteen-page arbitration award addresses several of the disputes between the Downeys and Sharp relating to the existence of an express easement. The principal issue debated by the parties before this Court, however, involves a one-paragraph portion of the arbitration award, entitled "Implied Easement," which purports to discuss Sharp's entitlement to an implied easement by necessity.[2]

---

1. Arbitration in this case occurred after protracted litigation involving several different properties and their owners. Pursuant to an agreement between the Downeys and Sharp that all remaining claims would be submitted to arbitration, the Circuit Court dismissed all pending claims and closed the case. Because the case now before the Court concerns only the arbitration award, we shall focus solely on the facts related to that award, and we shall not address the earlier litigation.

2. The arbitrator also heard arguments relating to the parties' disputes over various documents. These documents included the "Riverfront

In the arbitration award, the arbitrator briefly outlined the history of the two lots, explaining that the original owner, Ryan, had attempted to improve the "jeep trails" on the property, "without the necessary government permits," prior to dividing the property into two lots: lot 1, which we shall call the Downey lot, and lot 2, which we shall call the Sharp lot. It seems that the Jeep Trails Easement[3] was the only viable route to gain access to the Sharp lot.[4] The arbitrator recognized three issues related to Sharp's use of the Jeep Trails Easement, namely

"whether the easement extended to Morgan Station Road,[5] whether the easement extended to Lot 2 [the Sharp Lot], and whether the driveway as it now exists [over the Downeys' property] is the easement created by the Jeep Trails Easement."

The arbitrator concluded on the first issue that "the easement created by the Jeep Trails Easement does not extend to Morgan Stat[ion] Road." He also found, with regard to the second issue, that the Jeep Trails "easement stops at [the] division line of Lot 1 and 2 and does not enter Lot 2 [the

Easement," two versions of a "Jeep Trails Easement," and an alleged amendment to the Jeep Trails Easement, called the "Ryan Amendment." Because the "Riverfront Easement" and the "Ryan Amendment" do not impact our decision with respect to an implied easement by necessity, we shall not discuss these portions of the arbitration award.

3. A portion of the arbitrator's decision dealt with two rival versions of the Jeep Trails Easement. Since neither party challenges the arbitrator's decision that the Second Jeep Trails Easement is the "operative" easement, all references in this opinion to the Jeep Trails Easement relate to the Second Jeep Trails Easement.

4. Due to the lack of transcribed proceedings and a limited record in this case, it is difficult to discern precisely how and why Sharp's property is or may be landlocked. As later discussed, the arbitration award also is confusing with regard to this matter.

5. It appears that Sharp needs to reach Morgan Station Road in order to have access to other roads. As Sharp's brief before the Court of Special Appeals explained, "there is no practical access from Lot 2 to Morgan Station Road over the entirety of Lot 2, and the only practical access is over Lot 1."

Sharp lot]." He further found that the Jeep Trails Easement is "limit[ed] ... to the 'existing jeep trails located on Lot 1 [the Downey lot]' of which none give access to Lot 2 [the Sharp lot] ... [or] to Morgan Station Road." [6] With respect to the third issue, regarding an existing driveway over portions of both lots 1 and 2, the arbitrator decided that "substantial parts of the driveway were not built within the easement designations" and that the Downeys were entitled " 'to remove the existing driveway on those areas not approved' " by proper permits.

In short, it seems that the arbitration award determined that the "Jeep Trails Easement" functioned as a line that failed to connect to either of its two endpoints. According to the arbitrator, the "Jeep Trails Easement" did not connect to the Sharp lot or to Morgan Station Road. Furthermore, an

---

**6.** This Court has defined an "easement" in several opinions. Thus, in *Rogers v. P–M Hunter's Ridge*, 407 Md. 712, 715–716 n. 1, 967 A.2d 807, 810 n. 1 (2009), Judge Battaglia for the Court explained that

"[a] dominant tenant is the owner of '[a]n estate that benefits from an easement'; a servient tenant is the owner of '[a]n estate burdened by an easement.' *See* Blacks Law Dictionary 589 (8th ed. 2004) (defining 'dominant estate' and 'servient estate')."

The opinion later continued (407 Md. at 730–731, 967 A.2d at 819):

" 'In every instance of a private easement—that is, an easement not enjoyed by the public—there exists the characteristic feature of two distinct tenements—one dominant and the other servient.' *Bd. of County Comm'rs of Garrett County v. Bell Atlantic–Md., Inc.*, 346 Md. 160, 175, 695 A.2d 171, 179 (1997), quoting *Consol. Gas. Co. v. Mayor and City Counsel of Baltimore*, 101 Md. 541, 545, 61 A. 532, 534 (1905). 'Where a right of way is established by reservation, the land remains the property of the owner of the servient estate, and he is entitled to use it for any purpose that does not interfere with the easement.' *Greenwalt*, 178 Md. at 136, 12 A.2d at 524 (1940). The owner of the dominant tenement is entitled to use the easement in a manner contemplated at the time of the conveyance, while the servient tenant is entitled the use and enjoyment of his property consistent with the terms and conditions of the reservation, *Millson v. Laughlin*, 217 Md. 576, 585, 142 A.2d 810, 814 (1958). . . ."

In this case, it may be questionable whether, under the arbitration award, the "Jeep Trails Easement" was actually an "easement," because the arbitrator apparently found that the "easement" was entirely on the Downeys' lot. Also, if the "easement" extends to the boundary line between lots 1 and 2, as the arbitrator seemed to have found, it is unclear why it does not give access to lot 2.

existing driveway over parts of the Downeys' property was found to be not "within the easement designations." [7]

The arbitrator then indicated that he was turning to Sharp's argument that, in the absence of an express easement, Sharp was nonetheless entitled to an implied easement by necessity. The final paragraph of the award, and the only portion of the award purportedly addressing the claimed easement by necessity, reads as follows (references to exhibits deleted):

"Implied Easement

"Sharp contends that since he is landlocked, he has an implied easement by necessity. When Ryan [the original owner of both properties] created Lot 1 and 2, he immediately sold Lot 1 to Jekel [the Downeys' predecessor], created with Jekel the Riverfront Easement, then the existing Jeep Trail Easement. All of the above instruments were executed on the same day and recorded among the Land Records of Howard County. The Riverfront Easement gives almost exclusive use of Lot 2 to Jekel. The existing Jeep Trail Easement gave an easement through Lot 1 to Ryan, but it did not extend into Lot 2, the Riverfront Easement, or Morgan Station Road. Obviously, Jekel did not want any intrusion into her Riverfront Easement. Ordinarily, subsequent instruments should not be considered. Here, however, the existing Jeep Trail Easement was substituted by the Jeep Trail Easement by the same parties and concerned the same property and that also was recorded. This easement did not extend into Lot 2 to cross into

---

7. Specifically, the arbitrator's "Decision and Findings" stated, in relevant part, that (references to exhibits deleted):

"5. The 'Jeep Trails' over which Sharp has an easement are only those depicted on the Health Department Percolation Certification Plan dated November 11, 1991, and as permitted by the Maryland Department of Natural Resources Permit No. 94–NT–1072/199468197;

"6. The 'Jeep Trails' do not provide Sharp access to Morgan Station Road; and

"7. The portions of the paved driveway [that] are not located within the Jeep Trails defined by the Jeep Trials Easement Agreement, and/or extend beyond the 690 feet permitted by the 1996 Permit . . . may be removed by the Downeys."

the Riverfront Easement nor to Morgan Station Road. This is the operative easement and, once again, it is apparent that Jekel did not want her easement rights disturbed. Ryan, now Sharp, does not have an implied easement by necessity."

In a letter to counsel dated shortly after the award was issued, the arbitrator informed the parties that the final sentence of the award should be amended to "read, 'Ryan, now Sharp, does not have an implied easement by necessity, he does not need one.'" The amendment added the language "he does not need one" to the final sentence of the paragraph titled "Implied Easement."

After receiving this amendment, Sharp filed with the arbitrator a "Motion to Reconsider, Modify And/Or Correct Arbitration Award," pointing out that "the Award is inconsistent on its face." He stated that, by adding the words "he does not need one" to the Award, the "only implication one could draw ... is that an implied easement was not needed because an express easement already existed." As previously pointed out, however, the arbitration award contained the finding that Sharp did not have a valid express easement.

In denying Sharp's motion to reconsider the Award, the arbitrator did not acknowledge any inconsistency in the arbitration award. The arbitrator's denial stated as follows: "Since the owner of Lot 2, presently Sharp, cannot traverse or cross Lot 1, Sharp has no access to Morgan Station Road. Lot 2 is landlocked." The arbitrator did not further discuss the apparent inconsistencies among his finding that Lot 2 was landlocked, his finding that Sharp has no express easement, and his finding that Sharp does not need an easement by necessity.

## II.

The Downeys filed a petition in the Circuit Court for Howard County to confirm the arbitration award, and Sharp filed a motion to vacate it.[8] The Circuit Court "confirm[ed]

---

[8]. The Downeys first filed their petition to confirm the arbitration award prior to Sharp filing his motion for reconsideration with the arbitrator.

the arbitration award in [its] entirety," relying upon the Uniform Arbitration Act, Maryland Code (1974, 2006 Repl. Vol.), § 3–224 of the Courts and Judicial Proceedings Article. Section 3–224(b) provides:

"(b) *Grounds.*—The court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213 of this subtitle, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement as described in § 3–206 of this subtitle, the issue was not adversely determined in proceedings under § 3–208 of this subtitle, and the party did not participate in the arbitration hearing without raising the objection."

Section 3–224 further provides in subsection (c) as follows:

"(c) *When award not to be vacated.*—The court shall not vacate the award or refuse to confirm the award on the ground that a court of law or equity could not or would not grant the same relief."

In the Circuit Court, Sharp argued, *inter alia,* that the arbitrator "exceeded his powers" and that the award was "irrational" because, without an easement over the Downeys' land, Sharp's land would be landlocked. The Circuit Court,

---

Sharp responded in the Circuit Court by opposing the Downeys' petition and filing a petition to vacate the arbitration award. The Circuit Court did not immediately act on either of these petitions. When the arbitrator subsequently denied Sharp's motion to reconsider the award, both parties filed memoranda in the Circuit Court in support of their earlier petitions.

rejecting this argument, stated that "an easement by necessity is not created simply because a parcel is landlocked." The court continued: "[a]n owner may freely cut off access to his land," citing *Shpak v. Oletsky,* 280 Md. 355, 371, 373 A.2d 1234, 1243 (1977).

Sharp noted an appeal to the Court of Special Appeals which, in a reported opinion, reversed the judgment of the Circuit Court, remanded the case with instructions to vacate several findings of the arbitration award,[9] and with further instructions for "a determination (whether by court or an arbitrator) of the precise location of the implied easement by necessity." *Sharp v. Downey,* 197 Md.App. 123, 177–178, 13 A.3d 1, 33 (2010). The Court of Special Appeals' opinion reviewed the applicable provisions of the Maryland Uniform Arbitration Act, §§ 3–201 *et seq.* of the Courts and Judicial Proceedings Article (hereinafter sometimes referred to as the "Arbitration Act" or the "Act") and acknowledged that "the Act contemplates an extremely limited role for the courts in reviewing or countermanding an arbitrator's decision." *Sharp,* 197 Md.App. at 149, 13 A.3d at 16. While recognizing the Arbitration Act's limitations on the authority of the courts to overturn arbitration awards, the Court of Special Appeals proceeded to examine standards, not expressly mentioned in the Arbitration Act, which that court has used in the past to overturn arbitration awards under the Act. The Court of Special Appeals pointed out that arbitration awards which were "completely irrational," or which demonstrated "manifest disregard of the law," or which were contrary to the State's public policy, had been overturned by previous Court of Special Appeals' opinions.

Citing *O–S Corp. v. Kroll,* 29 Md.App. 406, 409, 348 A.2d 870, 872 (1975), *cert. denied,* 277 Md. 740 (1976), as a "touchstone case," the Court of Special Appeals noted that its *Kroll* opinion recognize[d] the "very limited extension of the reviewing court's scope of review to include authority to vacate an

---

**9.** The findings which the Court of Special Appeals ordered vacated are set forth earlier in this opinion, note 7, *supra.*

award that is 'completely irrational.' " *Sharp,* 197 Md.App. at 150, 13 A.3d at 17, quoting *Kroll,* 29 Md.App. at 409, 348 A.2d at 872 (some internal quote marks omitted). The *Kroll* opinion had earlier explained (29 Md.App. at 409, 348 A.2d at 872, footnote omitted):

> "Statutory support for this [completely irrational standard] is found not only in the fact that arbitrators 'exceeded their powers' when they reached a completely irrational result, but also in the connotation of the words 'undue means' in Sec. 3–224(b)(1). An award that is 'completely irrational' is inferentially opprobrious ... causing it to be suspect in its conception."

While pointing out that the Court of Appeals has never adopted *Kroll's* "completely irrational" standard of review for arbitration awards under the Uniform Arbitration Act, the Court of Special Appeals stated that the Court of Appeals has "never rejected that standard" either. *Sharp,* 197 Md.App. at 151 n. 16, 13 A.3d at 17–18 n. 6, citing *MCR v. Greene,* 148 Md.App. 91, 811 A.2d 331 (2002). The Court of Special Appeals has taken the position that, until the Court of Appeals rejects the "completely irrational" standard, "we shall assume its continued vitality in Maryland." *MCR v. Greene, supra,* 148 Md.App. at 106 n. 8, 811 A.2d at 339 n. 8.

The Court of Special Appeals next examined its use of the "manifest disregard of the law" standard in vacating arbitration awards under the Uniform Arbitration Act. The intermediate appellate court commented that the Court of Appeals has also never adopted or rejected this standard in cases subject to the Uniform Arbitration Act. The Court of Special Appeals noted that some other jurisdictions viewed the "manifest disregard of the law" standard as a judicially created ground, whereas "[i]n contrast, our decisions have understood the 'manifest disregard' standard as inherent in the statutory grounds of 'undue means' and exceeding arbitral authority." 197 Md.App. at 158 n. 21, 13 A.3d at 22 n. 21. The Court of Special Appeals "conclud[ed] that the arbitrator erred in rejecting an easement by necessity, and that his error rises to the level of manifest disregard of the law." 197 Md.App. at

166, 13 A.3d at 26. The Court of Special Appeals also characterized Maryland law as having a "strong public policy underpinning the doctrine of implied easements by necessity," because "landlocking a parcel renders the land unuseable for virtually any future purpose." 197 Md.App. at 167 and n. 25, 13 A.3d at 27 and n. 25.

The Court of Special Appeals reviewed Maryland case law relating to implied easements by necessity and found that, of the essential elements to prove the existence of an easement by necessity, Sharp had proven each element to the arbitrator. The intermediate appellate court stated (197 Md.App. at 171, 13 A.3d at 29–30):

> "Here, it was plain that Lot 1 and Lot 2 satisfied the first two elements to show an implied easement by necessity: '(1) initial unity of title of the parcels of real property in question; (2) severance of the unity of title by conveyance of one of the parcels.' *Stansbury [v. MDR], supra.,* 390 Md. [476] at 489, 889 A.2d 403 [2006]. In that context, the arbitrator's statements that 'Sharp has no access to Morgan Station Road' and that 'Lot 2 is landlocked' are fundamentally irreconcilable with his statement that 'Ryan, now Sharp, does not have an implied easement by necessity, he does not need one.' As the Court in *Stansbury* explained, 'an easement by necessity exists by reason of the facts and circumstances present in a situation,' 390 Md. at 485 n. 5, 889 A.2d 403. Given the arbitrator's finding that Lot 2 was landlocked, the necessity was present, and it was 'completely irrational,' *Kroll,* 29 Md.App. at 409, 348 A.2d 870, for the arbitrator [to] conclude that appellant 'does not need' an easement."

The Court of Special Appeals also found that "it is quite clear that Ryan never intended to landlock Lot 2. To the contrary, both Ryan and Jekel [lot 1's previous owner] unequivocally intended to create an easement, for the express purpose of ingress and egress to Lot 2." 197 Md.App. at 174, 13 A.3d at 31. The arbitrator, however, had inferred a different intention from the evidence. The arbitration award

stated: "it is apparent that [lot 1's owners] did not want [their] easement rights disturbed" by lot 2's owner.

The Court of Special Appeals summarized its holdings as follows: (197 Md.App. at 176–177, 13 A.3d at 33, footnotes omitted, emphasis added):

> "In sum, here the arbitrator ruled that there was no implied easement by necessity because it was 'not needed,' although the Award, on its face, found the existence of all of the predicates of an implied easement by necessity. This error is central to the dispute at hand. It works a " 'manifest injustice' " to [Sharp] and any successor to his title ... and produced an *Award that violated clear public policy that disfavors rendering land inaccessible.* Therefore, we conclude that the error goes beyond mere legal error and constitutes *manifest disregard of the law.*"

The Downeys filed a motion for reconsideration of the Court of Special Appeals' decision. When the motion was denied, they petitioned this Court for a writ of certiorari, which was granted. *Downey v. Sharp,* 419 Md. 646, 20 A.3d 115 (2011). The respondent, Nicholas Sharp, did not file a cross-petition for certiorari.

## III.

The Downeys, in their certiorari petition and briefs, maintain that the grounds set forth in § 3–224(b), for vacating an arbitration award under the Uniform Arbitration Act, are exclusive and do not include either an award which, in the reviewing court's judgment, is "completely irrational" or an award which demonstrates "manifest disregard of the law." Alternatively, the Downeys argue that, even if awards under the Act are reviewable for "complete irrationality" or "manifest disregard of the law," the award in the present case was neither irrational nor in manifest disregard of the law. The Downeys also challenge the Court of Special Appeals' reversal of "an arbitration award denying an easement by necessity based upon factual findings ... made by [the] reviewing court." (Certiorari petition at 4). Finally, the Downeys pres-

ent the broad question of whether "the Court of Special Appeals err[ed] when it vacated the arbitrator's finding that Respondent was not entitled to an easement by necessity across Petitioners' property." (*Ibid.*).

The respondent Sharp argues in favor of reviewing Uniform Arbitration Act awards under both the "completely irrational" and the "manifest disregard of the law" standards. Sharp contends that the Court of Special Appeals did not err in ordering that the award be vacated under either of these standards and ordering that the location of an easement by necessity over lot 1 should be determined by either the trial judge or an arbitrator.

In § 3–224(b) and (c) of the Courts and Judicial Proceedings Article, quoted earlier, the Uniform Arbitration Act enumerates the grounds upon which a "court shall vacate" an arbitration award. The grounds are: (1) if the "award was procured by corruption, fraud, or other undue means;" (2) if there was "partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;" (3) if the "arbitrators exceeded their powers;" (4) if the arbitrators committed certain procedural errors in the conduct of the hearing, "as to prejudice substantially the rights of a party," (5) if there was no agreement to arbitrate. Subsection (c) provides that a court shall not vacate or refuse to confirm an award on the ground that a court would not grant the same relief.

As previously pointed out, the grounds for vacating awards under the Act do not expressly include the two additional grounds for vacating awards utilized by the Court of Special Appeals, namely awards which were "completely irrational" and awards which demonstrated "manifest disregard of the law." Moreover, we disagree with the Court of Special Appeals that these two grounds are encompassed by the statutory grounds of an award that was "procured by . . . undue means," § 3–224(b)(1), or an award which exceeded the arbitrators' "powers," § 3–224(b)(3).

■ The statutory phrase "undue means" of "procur[ing]" an award refers to how the award came about or what means were used to obtain an award. An "irrational" award or an award demonstrating a "manifest disregard of the law," however, refers to the final product, the final award itself. There is a distinction between the process, the "undue means," and the product, the rational or "irrational" award. An award may have been "procured by ... undue means," but the award itself could be quite rational and legally correct in the view of a reviewing court. On the other hand, an award may have been properly procured, but it could be highly irrational and contrary to the law.

■ The Court of Special Appeals' reliance on § 3–224(b)(3), i.e., the statutory ground of an award which exceeds the arbitrator's powers, is similarly misplaced. Thus, an issue or matter resolved by an award may be rational and legally correct but the arbitrator, under the arbitration agreement, may have had no power or authority to resolve the particular issue. On the other hand, an issue may have clearly been within the arbitrator's powers, but the arbitrator's resolution of the issue may have been irrational or manifestly erroneous as a matter of law. *See Messersmith, Inc. v. Barclay Town-house*, 313 Md. 652, 659–661, 547 A.2d 1048 (1988), where Judge Cole for the Court drew a sharp distinction between reviewing an award under the Court of Special Appeals' "completely irrational" standard and applying the Act's "exceeding the arbitrator's powers" standard. This Court also pointed out in *Messersmith* that the "completely irrational" standard "has never been approved by this Court." Vacating an award because it is "completely irrational" or "manifestly in disregard of the law" is clearly different from vacating an award for one of the reasons delineated in § 3–224(b).

Consequently, judicial review of an arbitrator's award on the basis of "irrationality" or "manifest error of law" does not fall within any of the grounds contained in § 3–224(b) of the Uniform Arbitration Act. The question is whether an arbitration award subject to § 3–224 of the Uniform Arbitration Act

should be vacated by a reviewing court if the court finds that the award is "completely irrational" or demonstrates a "manifest disregard of the law," even though those grounds are not included in § 3–224. In other jurisdictions, cases under the Uniform Arbitration Act, as well as cases under the similarly worded Federal Arbitration Act or under other similarly worded statutes, are divided on this question. *See Board of Education v. Prince George's Co. Educators' Ass'n,* 309 Md. 85, 102–105, 522 A.2d 931, 939–941 (1987), collecting the cases.

In *Board of Education v. Prince George's Co. Educators' Ass'n, supra,* involving an arbitration agreement between an employer and its employees, both courts below and the parties took the position that the arbitration agreement was subject to the Uniform Arbitration Act, and that the Act's grounds for vacating the arbitration award were applicable. The Court of Special Appeals, relying on its earlier opinion in *O–S Corp. v. Kroll, supra,* 29 Md.App. 406, 348 A.2d 870, held that the award was "completely irrational" and should be vacated on this ground. This Court granted a petition for a writ of certiorari to decide whether arbitration awards under the Uniform Act could be vacated on grounds not set forth in § 3–224(b) of the Act, *i.e.,* awards which are "completely irrational" or in "manifest disregard of the law." We did not reach this issue, however, as the parties and the courts below had overlooked § 3–206(b) of the Uniform Arbitration Act which provides that the Act

"does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in the agreement that this subtitle shall apply."

Specifically with regard to the "manifest disregard of the law" standard, the Court stated (309 Md. at 105, 522 A.2d at 941):

"Since ... the Maryland Uniform Arbitration Act is not applicable to the instant arbitration award, we need not and do not decide whether an arbitration award subject to the Uniform Act may be vacated for an error apparent on the face of the award or for a 'mistake so gross as to work

manifest injustice' or for 'manifest disregard' of the law. Resolution of that issue by this Court must await an appropriate case where the question is presented. Under Maryland common law standards for reviewing arbitration awards, however, we hold that an award is subject to being vacated for a 'palpable mistake of law or fact ... apparent on the face of the award' or for a 'mistake so gross as to work manifest injustice.' As the award in this case is not governed by statutory review criteria, it is subject to these common law standards."

*See also American Baptists v. Trustees,* 335 Md. 564, 571–572, 644 A.2d 1063, 1066 (1994), *cert. denied,* 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 785 (1995); *Baltimore County v. City of Baltimore,* 329 Md. 692, 701–702, 621 A.2d 864, 868 (1993); *Messersmith, Inc. v. Barclay Townhouse, supra,* 313 Md. at 659–660, 547 A.2d at 1051–1052; *Anne Arundel County v. Fraternal Order,* 313 Md. 98, 104–110, 543 A.2d 841, 844–847 (1988).

As in *Board of Education v. Prince George's Co. Educators' Ass'n, supra,* and subsequent cases, we shall not in the present case reach the issue of whether an award subject to § 3–224 of the Uniform Arbitration Act may properly be vacated by a reviewing court on the grounds that it is "completely irrational" or demonstrates a "manifest disregard of the law." As we shall explain below, that issue is not presented by the facts in this case.

The Court of Special Appeals recognized that "the arbitrator's statements that 'Sharp has no access to Morgan Station Road' and that 'Lot 2 is landlocked' are fundamentally irreconcilable with his statement that 'Ryan, now Sharp, does not have an implied easement by necessity, he does not need one.'" *Sharp,* 197 Md.App. at 171, 13 A.3d at 29–30. The Court of Special Appeals, however, resolved this inconsistency by crediting the arbitrator's findings that Sharp has no access to Morgan Station Road and that lot 2 is landlocked, and by rejecting the arbitrator's finding that Sharp does not need an easement by necessity. The Court of Special Appeals also rejected the arbitrator's finding that lot 1's owners "did not

want [their] easement rights disturbed" by lot 2's owner, and the appellate court substituted its own findings that "it is quite clear that Ryan never intended to landlock Lot 2" and that "both Ryan and Jekel unequivocally intended to create an easement." (197 Md.App. at 174, 13 A.3d at 31).

This Court, on several occasions, has pointed out that, under Maryland law, reviewing "courts generally defer[ ] to the arbitrator's findings of fact and applications of law. * * * [M]ere errors of law and fact [do] not ordinarily furnish grounds for a court to vacate or refuse enforcement of an arbitration award." *Board of Education v. Prince George's Co. Educators' Assn., supra,* 309 Md. at 98–99, 522 A.2d at 937. *See, e.g., American Baptists v. Trustees, supra,* 335 Md. at 571, 644 A.2d at 1066; *Baltimore County v. City of Baltimore, supra,* 329 Md. at 701, 621 A.2d at 868; *Amalgamated Transit Union, Div. 1300 v. Mass Transit Admin.,* 305 Md. 380, 389, 504 A.2d 1132, 1136 (1986); *Chillum–Adelphi Volunteer Fire Department, Inc. v. Button & Goode, Inc.,* 242 Md. 509, 516, 219 A.2d 801, 806 (1966); *Mayor and City Council of Baltimore v. Allied Contractors, Inc.,* 236 Md. 534, 546, 204 A.2d 546, 552 (1964); *Schreiber v. Pacific Coast Fire Insurance Co.,* 195 Md. 639, 646–647, 75 A.2d 108, 112 (1950); *McDonald v. Real Estate Board,* 155 Md. 377, 382–383, 142 A. 261, 263 (1928); *Dominion Marble Co. v. Morrow,* 130 Md. 255, 260, 100 A. 292, 293 (1917).

In the case at bar, not only did the Court of Special Appeals refuse to defer to the arbitrator's findings of fact and conclusions of law, but the intermediate appellate court rendered its own findings of fact and conclusions, which were contrary to those of the arbitrator. Moreover, the Court of Special Appeals did so in a case where there was no transcript of the proceedings before the arbitrator and where exhibits submitted at the arbitration proceedings were not included in the record. A transcript of the hearing before the arbitrator, if there had been one, and the exhibits, might have shed some light upon the arbitrator's apparent conflicting findings of fact. There might have been testimony, documentary evidence,

concessions, statements of counsel, etc., which might have explained the arbitrator's findings in the first amendment to the arbitration award which stated that Sharp "does not have an implied easement by necessity, *he does not need one.*" (Italicized language added by the amendment).[10]  A transcript of the hearing before the arbitrator and the exhibits might have helped to explain some of the other inconsistences or ambiguities in the award.

If we were to assume, *arguendo,* that an award under the Act should be vacated upon a judicial determination that the award was "completely irrational" or that it demonstrated "manifest disregard of the law," we would not be able, upon this record, to conclude that the award was "completely irrational" or in "manifest disregard of the law."  Such conclusion, without any knowledge of what was said or submitted at the arbitration hearing, might itself be deemed "irrational." The arbitrator's final statement in denying Sharp's motion to reconsider, namely that "Lot 2 is landlocked," would not compel the result reached by the Court of Special Appeals.  It is entitled to no more weight than the earlier statement in the first amendment to the award, that Sharp "does not need" an easement by necessity.  Moreover, an easement by necessity does not automatically flow from every situation of landlocked property.  *See Shpak v. Oletsky, supra,* 280 Md. at 364–365, 373 A.2d at 1240 ("[T]he law does not prohibit one from cutting himself off from all access to his land"), and authorities there cited.

Although we disagree with the grounds upon which the Court of Special Appeals ordered that the award be vacated, as well as that court's direction that an easement over the Downeys' property be located, it is clear that the arbitration

---

10.  Whether a land owner in Sharp's position *needs* an easement by necessity is critically important.  This Court has held: "Mere inconvenience will not be sufficient to justify the finding of a way of necessity.  It is only in case of strictest necessity ... that the principle of implied easement can be invoked."  *Condry v. Laurie,* 184 Md. 317, 322, 41 A.2d 66, 68 (1945).  *See Stansbury v. MDR,* 390 Md. 476, 488, 889 A.2d 403, 410 (2006).

award, in part, was contradictory. There is a statutory provision which appears to be relevant to this circumstance, namely § 3–225(a) of the Maryland Uniform Arbitration Act. Section 3–225 provides as follows:

"**§ 3–225. Rehearing before arbitrators.**

(a) *New arbitrators.*—If any award is vacated on grounds other than those stated in § 3–224(b)(5) of this subtitle, the court may order a rehearing before new arbitrators selected by the parties as provided by the agreement, or by the court in absence of an agreement as provided in § 3–211 of this subtitle.

(b) *Same arbitrators.*—If the award is vacated on grounds set forth in § 3–224(b)(3) and (4) of this subtitle, the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with § 3–211 of this subtitle.

(c) *Time.*—The time within which the agreement requires the award to be made is applicable to the rehearing and commences from the date of the order or at a time specified by the court."

Although this Court has not previously dealt with § 3–225, courts elsewhere have held that § 3–225(a) or a similar statute authorizes a court to vacate an award and order a rehearing before arbitrators when the award is contradictory, uncertain, or requires clarification. Some cases reach this result even in the absence of a statutory provision. In a leading opinion, the United States Court of Appeals for the Second Circuit, in a commercial arbitration case, stated (*Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir. 1985)):

"Although judicial review of an arbitration award is very narrowly limited, *Diapulse Corporation of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980), a court should not attempt to enforce an award that is ambiguous or indefinite, *id.* at 1111; *Bell Aerospace Co. v. Local 516, UAW,* 500 F.2d 921, 923 (2d Cir.1974). An ambiguous award should be remanded to the arbitrators so that the

court will know exactly what it is being asked to enforce. *Cleveland Paper Handlers and Sheet Straighteners Union No. 11 v. E.W. Scripps Co.,* 681 F.2d 457, 460 (6th Cir. 1982)(per curiam); *Oil, Chemical & Atomic Workers International Union, Local 4–367 v. Rohm and Haas, Texas, Inc.,* 677 F.2d 492, 495 (5th Cir.1982) (per curiam) (Appendix). We believe there is sufficient ambiguity to require a remand in the instant case."

*See also, e.g., Bell Aerospace Company v. Local 516,* 500 F.2d 921, 922, 923 (2d Cir.1974)("The employer … appeals on the ground that the award was ambiguous and contradictory and should have been remanded for clarification. We find this claim justified and to that extent we reverse and remand. * * * Courts will not enforce an award that is incomplete, ambiguous, or contradictory"), and cases there cited; *Zaninovich v. Teamster Farmworker Local Union 946,* 86 Cal.App.3d 410, 150 Cal.Rptr. 233 (1978)(Case remanded to trial court with directions to vacate an "uncertain" award and order a rehearing by arbitrators); *Federal Signal Corp. v. SLC Technologies,* 318 Ill.App.3d 1101, 1113, 252 Ill.Dec. 910, 743 N.E.2d 1066, 1075 ("[T]he Act specifically gives the court the power to remand an award for clarification"), *appeal denied,* 195 Ill.2d 551, 257 Ill.Dec. 890, 754 N.E.2d 1285 (2001).

Section 3–225(a), by its language, is not limited to awards which are vacated for the reasons set forth in § 3–224(b). Moreover, when a court orders a rehearing before an arbitrator pursuant to § 3–225(a), because an award is contradictory, the court is not substituting its view of the law or the facts for that of the arbitrator. Rather, the decision of the arbitrator after rehearing will be the final award, subject to the very limited judicial review applicable to arbitration awards generally.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS PURSU-**

ANT TO § 3–225(a) OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID ½ BY THE PETITIONERS AND ½ BY THE RESPONDENT.