81 A.3d 491

**Kathy J. GORDON**

v.

**Tammie L. LEWIS, et al.**

**No. 1505, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 18, 2013.

Thomas J. Schetelich (Ferguson, Schetelich & Ballew, PA, on the brief), Baltimore, MD, for Appellant.

Catherine M. Manofsky & Kevin F. Arthur (Kramon & Graham, PA, on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, MATRICCIANI, J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

J. FREDERICK SHARER, J. (Retired, Specially Assigned).

In this appeal from a judgment of the Circuit Court for Worcester County we are asked to review the propriety of an arbitration award of punitive damages.

Seeking review of the circuit court's affirmance of the arbitration award, including punitive damages, appellant, Kathy J. Gordon, poses a single question, which, as slightly rephrased, asks:

> Did the circuit court properly confirm an arbitration award of punitive damages that included an express finding of willful and wanton conduct?

We shall affirm.

## FACTUAL and PROCEDURAL BACKGROUND

Because this appeal implicates only a question of law, we need not provide a detailed explication of the dealings between the parties that gave rise to this litigation. *Washington v. State*, 190 Md.App. 168, 988 A.2d 61 (2010). Nonetheless, we shall provide an overview of those facts.

Gordon, one of several defendants below,[1] began doing business with appellees, Tammie L. Lewis and William E.

---

1. The other defendants, Gordon Financial Services, Inc. ("GFS"), TMG Holding Co. Inc. ("TMG"), The Medallion Advisory Services, LLC

Lewis, Jr., in 1990, initially as a tax preparer. Later, in 2004, she became their financial and investment advisor. Tammie Lewis is a stay-at-home mother with a high school education; William Lewis works as a construction foreman. It is not disputed that the Lewises were unsophisticated investors.

During a prior employment, Tammie Lewis was exposed to asbestos. She developed mesothelioma, for which she received a settlement of $1,467,000. For the benefit of the Lewis children, Gordon established the Tammie L. Lewis Revocable Trust ("the Trust"), funded in large part by the proceeds of the asbestos settlement. Tammie Lewis and William E. Lewis, Jr. served as trustees of the Trust, as did Gordon until her removal in 2006.

On September 26, 2008, the Lewises, individually and as Trustees, filed a complaint in the Circuit Court for Worcester County against Gordon and the other defendants. The complaint alleged that as a result of defendants' fraud and misrepresentations, appellees invested several hundred thousand dollars in an unsecured, high-risk business venture owned and operated by Gordon's son. The investment consisted of high risk notes in Pomfret Plantation, LLC, a development property that was then in poor financial condition. Pomfret subsequently filed for bankruptcy, causing appellees to lose their entire investment.

The complaint alleged that at all relevant times, Gordon was employed by the other defendants and acted as an agent, employee, and representative of each of those entities. The claims asserted by the Lewis parties were: fraudulent misrepresentation, constructive fraud, concealment or non-disclosure,[2] negligent misrepresentation, and negligence. The complaint sought both compensatory and punitive damages.

---

("TMAS"), and Medallion Investment Services, Inc. ("MISI") are not parties to this appeal. All have filed for bankruptcy.

2. In Count 3, appellees asserted that as their financial and investment advisor, defendants had a duty to disclose several material facts to the Lewises regarding their investments, which they failed to do. "Defendants failed to disclose these facts with the intent to deceive," and in

Appellees alleged specifically that, relying on the advice of Gordon, they purchased two $100,000 notes investing in Pomfret Plantation, which falsely stated that they were secured by 520 acres of land in Somerset County. Further, Tammie Lewis made a loan to Pomfret Plantation of $50,000, which Gordon personally guaranteed. On November 21, 2005, Tammie Lewis received a $100,000 promissory note from Pomfret Plantation, assuring payment by June 30, 2006. Appellees never received payment on the Pomfret notes, although Gordon made repeated promises that high interest was being earned on investments in Pomfret Plantation. After June 30, 2006, Gordon's promises of payment continued, but payment was not forthcoming.

What appellees were never told by Gordon, and did not know, was that on May 22, 2006, Pomfret had filed a Chapter 11 bankruptcy petition. Appellees filed timely claims in the bankruptcy case but, because their notes were unsecured, they were treated as unsecured creditors. After foreclosure on the Pomfret assets, there were no excess funds to satisfy appellees' claims.

In response to appellees' suit in the Circuit Court for Worcester County, Gordon and the other defendants with whom Gordon had a mutuality of interest, moved to dismiss and filed petitions to compel arbitration before the Financial Industry Regulatory Authority ("FINRA").[3] Appellees op-

---

failing to disclose these material facts, "defendants acted with actual malice, evil motive, an intent to injure plaintiffs, ill will and an intent to deceive plaintiffs."

**3.** Prior to filing suit, appellees, in November 2007, filed a complaint with the Financial Industry Regulatory Authority ("FINRA"), resulting in Gordon's being disciplined. Gordon also entered into a consent order with the Maryland Securities Commissioner on December 12, 2008, in which she agreed, *inter alia,* to cease and desist from selling unregistered securities or offering investment advice.

FINRA is an independent, non-governmental, securities industry "watchdog." It is a not-for-profit organization authorized by Congress to protect investors by assuring that the securities industry operates fairly and honestly. Among FINRA's offered services is arbitration or

posed the petition to compel arbitration. Ultimately, on August 21, 2009, the circuit court granted the petition to compel arbitration and referred all claims to FINRA for arbitration. Proceedings pending in the circuit court were stayed, pending the completion of arbitration.

Appellees re-filed their statement of claim before FINRA, in which they asserted the same factual allegations as in the complaint previously filed: fraudulent misrepresentation, constructive fraud, concealment or non-disclosure, negligent misrepresentation, negligence and negligent supervision.[4] Both compensatory and punitive damages were sought.[5]

The essence of appellees' complaint before FINRA is found in Count III, concealment or non-disclosure:

77. As the claimants' financial advisors and investment advisors, the respondents had a duty to disclose material facts to the Lewises regarding their investments.

78. The respondents failed to disclose material facts regarding the level of risk associated with investing in Pomfret Plantation and Pomfret Plantation's poor financial condition. Specifically, the respondents failed to disclose that the investments were unsecured, that there was a high level of risk associated with the investments, that there was a possibility that the Bills and the Note would not be repaid, and that Pomfret Plantation was struggling financially at the time the investments were made.

79. The respondents failed to disclose these material facts with the intent to deceive the claimants.

80. In failing to disclose these material facts, the respondents acted with actual malice, evil motive, an intent to injure claimants, ill will, and an intent to deceive claimants.

---

mediation of disputes arising within the investment industry. www.finra.org

4. Negligent supervision was asserted only against the other defendants.

5. The FINRA Statement of Claim contained an additional count alleging negligent supervision.

81. The respondents knew or should have known that the claimants would not have invested in Pomfret Plantation if they had known of the existence of the undisclosed facts.

82. The claimants justifiably relied upon the respondents' misrepresentations because the respondents were their investment advisors and had established a relationship of trust and confidence with the claimants.

83. The claimants suffered economic and noneconomic damages as a direct result of respondents' fraudulent concealment of material facts. Under Maryland law, the claimants are entitled to recover noneconomic damages that result from the fraud. *Hoffman v. Stamper*, 385 Md. 1, 38 [867 A.2d 276] (2005).

FINRA conducted a dispute resolution arbitration hearing from August 2–5, 2010. On August 9, 2010, the FINRA arbitration panel issued its award, as follows:

### AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

Respondents Gordon, GFS, MISI, TMG and TMAS are found jointly and severally liable and shall pay to Claimants compensatory damages in the amount of $250,000.00, plus interest at the rate of 6% per annum from December 31, 2005 until the date of payment of the award.

Respondents **Gordon,** GFS, MISI, TMG and TMAS are found jointly and severally liable and **shall pay to Claimants punitive damages** in the amount of $25,000.00. The majority of the Panel found that Respondent **Gordon's actions were willful and wanton as she withheld information she knew about the investment.**

Respondents Gordon, GFS, MISI, TMG and TMAS are found jointly and severally liable and shall pay to Claimants the sum of $600.00 representing reimbursement of the non-

refundable portion of the claim filing fee previously paid by Claimants to FINRA Dispute Resolution.

Any and all relief not specifically addressed herein, including Claimants' request for attorneys' fees, is denied.

(Emphasis added).

Neither Gordon nor the other responsible parties moved to modify or correct the arbitration award. However, on August 31, 2010, Gordon and Gordon Financial Services filed a petition to vacate the award in the Circuit Court for Wicomico County, which, as subsequently noted by the trial court,[6] was not the proper venue. Gordon subsequently filed for bankruptcy, and on September 9, 2010, filed a suggestion of bankruptcy in the Circuit Court for Wicomico County, resulting in a stay of all proceedings, pursuant to Section 362 of the United States Bankruptcy Code. 11 U.S.C. § 362. On March 25, 2011, the United States Bankruptcy Court for the District of Maryland issued an order lifting the automatic stay solely to permit appellees to go forward with proceedings "to confirm the arbitration award in their favor" against Gordon, as well as any appeals therefrom.

Appellees filed a petition to confirm the arbitration award and enter judgment against Gordon on March 29, 2011, in the Circuit Court for Worcester County, the proper venue.[7] Gordon timely responded by opposing confirmation of the award. They also moved to vacate the arbitration award. Appellees maintained that the arbitration award should be entered pursuant to Md.Code, Courts & Judicial Proceedings ("CJP")

---

6. Unless noted otherwise all references to the "court" or "trial court" are to the Circuit Court for Worcester County. As correctly noted by the court, CJP § 3–203(c) provides that "a subsequent petition shall be filed with the court hearing the initial petition unless the court directs otherwise." Because appellees' initial lawsuit was pending in Worcester County, Gordon's motion to vacate ought to have been filed in that court.

7. The court initially granted this motion on April 11, 2011, but, during the dispositive hearing on June 29, 2011, vacated the order on the basis that it had been prematurely entered. The court issued a formal order reflecting its ruling on July 1, 2011.

§ 3–227(b) (2006 Repl.Vol.) which provides: "The court shall confirm the award, unless the other party has filed an application to vacate, modify, or correct the award...."

The court conducted a dispositive hearing on the respective motions, the primary focus being Gordon's motion to vacate the punitive damages awarded by the FINRA arbitration panel. Gordon argued that the FINRA arbitration panel exceeded its authority in awarding punitive damages. Gordon contended before the circuit court, as she does now, that the withholding of information does not provide grounds for an award of punitive damages. Her counsel argued:

> [APPELLANT'S COUNSEL]: Now, as I indicated a moment ago, sir, there were six different counts that the—that were in front of the arbiters. **Several of them were counts that could support an award of punitive damages, fraudulent—there was fraud that could, but there were other counts,** constructive misrepresentation, concealment, negligent misrepresentation, and negligence, that really cannot support a finding of punitive damages. And, indeed, in two of the counts, negligent misrepresentation and negligence, punitive damages were not even pled.
>
> Now, what we have is an award.... [T]his case arose from the investment by the Plaintiffs, by the Lewises, in a failed real estate venture. They invested money in 2005 and 2006. They invested a total of $250,000.
>
> When that money was lost, they filed suit, that later went into arbitration, against people who were involved in the investment, but also against Ms. Gordon, who was their investment adviser. And some of the counts were negligence counts, that she didn't give them good advice, and **then there was a count that was a fraud count. And the fraud count, of course, is that there is an intentional misrepresentation.**
>
> The arbiters' award does not say what count they're deciding on. Rather, they granted an award of $250,000, which was the amount of the original investment. They denied the further claims that were made for noneconomic

damages. And, on a two-to-one vote, they entered an award of $25,000 of punitive damages because they said that Ms. Gordon withheld information that she knew about the investment.

And that is the particular language that this argument, that this question, turns upon. **Because withholding—to withhold information is not a basis under Maryland law for a punitive—for a fraud finding or for punitive damages to be awarded.**

(Emphasis added). Gordon asserted that the punitive damage award exceeded the authority of the arbiters "based on the clear language of the arbiters' award."

In response, appellees argued that "concealment of a material fact when there is a duty to disclose is . . . a sister tort to fraud by affirmative misrepresentation[,]" so the FINRA award was appropriate. Appellees also argued that the award should be confirmed on the basis of *respondeat superior,* given that the punitive damages award against GFS had already been confirmed. Counsel maintained that GFS was simply the "corporate veil" for Gordon, pointing out, among other facts, that they were represented by the same counsel throughout arbitration. The court, not willing to imply any facts beyond those stated in the award, and making clear that it did not "have any transcript of the arbitration in front of [it]," rejected appellees' argument.

After considering the arguments of both parties, and the FINRA award, the court issued the following ruling from the bench:

Well, the Court has before it Ms. Gordon's petition, Motion to Vacate the Arbiters' Award as to the $25,000 which was entered against her for punitive damages.

The only evidence the Court has as to the arbitration proceeding was the award itself, which the Court has taken judicial notice of. And that makes clear that one of the claims that was lodged against Ms. Gordon was a claim of fraud.

The arbiters say that, under the award, that Ms. Gordon and others were found jointly and severally liable and shall pay to claimants punitive damages in the amount of $25,000. The majority of the panel found that Respondent Gordon's actions were willful and wanton and she withheld information she knew about the investment. Willful, of course, is another way of saying deliberate, intentional withholding of information.

The basis upon which the Court can vacate an arbitrator's award, or part of an arbitrator's award, is set forth in the Courts & Judicial Proceedings Article 3–224(b). And the one upon which Ms. Gordon is relying is (b)(3), as I understand it, which says that the arbitrators exceeded their powers. Ms. Gordon has the burden of proof with respect to that.

And the argument is that the—the award as to punitive damages was neither factually, nor legally, correct, without any factual or legal basis.

The Court doesn't know the factual basis of the arbitrators' award inasmuch as there's no transcript of the arbitration presented. The Court knows that, at least in summarizing their award for punitive damages, they indicated that they found that Ms. Gordon's actions were willful in withholding information.

The Court doesn't find that that rises to the level of proof, even by a preponderance of the evidence, that the arbitrators exceeded their powers, that there's—the evidence upon which the arbitrators relied is simply not before the Court. And the simple summary of the award is an insufficient basis, in the Court's judgment, to find that the arbitrators exceeded their powers with respect to the award of punitive damages against Ms. Gordon in the amount of $25,000. The motion or petition to vacate the punitive damages portion of the award is denied.

The court granted the petition to confirm and entered judgment against Gordon. The court issued written rulings in an Order dated July 1, 2011. This appeal followed.

**310**

## DISCUSSION

█ As the trial court correctly recognized, this matter is governed by the Maryland Uniform Arbitration Act (the "Act"), codified in Md.Code (2006 Rep. Vol.) ("CJP") §§ 3–201 *et seq.* The Act, which contemplates an extremely limited role for courts in reviewing an arbitration award, sets forth clear procedures and standards designed to encourage parties to seek "an informal, expeditious, and inexpensive alternative to conventional litigation." *Birkey Design Group, Inc. v. Egle Nursing Home, Inc.,* 113 Md.App. 261, 265, 687 A.2d 256 (1997). The Act provides that a court may not vacate an award, or refuse to confirm an award, "on the ground that a court of law or equity could not or would not grant the same relief." CJP § 3–224(c). Rather, the Act sets forth five grounds upon which a "court shall vacate" an arbitration award:

(1) if the "award was procured by corruption, fraud, or other undue means;"

(2) if there was "partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;"

(3) if the "arbitrators exceeded their powers;"

(4) if the arbitrators committed certain procedural errors in the conduct of the hearing, "as to prejudice substantially the rights of a party;" or

(5) if there was no agreement to arbitrate.

CJP § 3–224(b). As we shall discuss, our focus in this appeal is on CJP § 3–224(b)(3)—whether the arbitrators exceeded their powers.

█ "Judicial review of an arbitrator's decision is extremely limited, and a party seeking to set it aside has a heavy burden." *Letke Sec. Contractors, Inc. v. United States Sur. Co.,* 191 Md.App. 462, 472, 991 A.2d 1306 (2010). "In fact, the standard of review of arbitral awards 'is among the narrowest known to the law.'" *Id.* (quoting *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7,* 886 F.2d 275, 276 (10th Cir.1989)). *See Southern Maryland Hosp. Ctr.*

*v. Edward M. Crough, Inc.,* 48 Md.App. 401, 407, 427 A.2d 1051 (1981) (stating that "the courts' function in confirming or vacating a commercial award is 'severely limited.' "). The role of a court is to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably[.]" *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union,* 76 F.3d 606, 608 (4th Cir.1996). Conclusions of an arbitrator "are reviewed using a deferential standard on the far side of the spectrum away from a usual, expansive *de novo* standard." *Mandl v. Bailey,* 159 Md.App. 64, 92, 858 A.2d 508 (2004). Appellate discipline mandates that we give deference to the decision of the arbitrator, and this Court does not speculate about the arbitrator's reasons for making an award. Rather, it is required that we "assume the arbitrator acted properly." *Birkey Design Group,* 113 Md.App. at 267, 687 A.2d 256.

As recently made plain by the Court of Appeals, reviewing courts defer to the arbitrator's findings of fact and applications of law. " '[M]ere errors of law and fact [do] not ordinarily furnish grounds for a court to vacate or refuse enforcement of an arbitration award.' " *Downey v. Sharp,* 428 Md. 249, 266, 51 A.3d 573 (2012), (quoting *Board of Education v. Prince George's Co. Educators' Ass'n,* 309 Md. 85, 98–99, 522 A.2d 931 (1987)). "We will not vacate an arbitration award simply because the court would not have made the same award as the arbitrator, or for mere legal error." *Letke,* 191 Md.App. at 472–73, 991 A.2d 1306. As the Court held in *Downey,* manifest disregard of the law does not fall within one of the statutory grounds for which a court may vacate an arbitrator's award. 428 Md. at 249, 51 A.3d 573.

Appellant posits that the arbitration panel exceeded its powers by issuing an award of punitive damages because the award was in "manifest disregard of the law." She contends that, because the award provides only that Gordon's action's were "willful and wanton as she withheld information she knew about the investment," but provides no further findings of fact and does not state which counts upon which the award

is based, the court committed error by confirming it. Appellant argues further that the withholding of information by a financial professional with a fiduciary duty to her clients may be the basis for an award of compensatory damages, but not punitive damages. In her reply brief she makes the argument that: "An award of punitive damages in a cause of action for fraud must *always* be supported by clear and convincing evidence of an assertion of a known, material falsehood—not the mere withholding of information."

Gordon maintains that constructive fraud cannot support a claim for punitive damages, and "concealment or non-disclosure, as plead in Count III of the Statement of Claim, is not fraud at all." She thus concludes that, because limitation of punitive damages to cases involving actual malice that is clearly and convincingly proven is a well-defined public policy, the award of damages for just "willful and wanton" actions is in violation of such policy, so the arbiters' award was, on its face, based on an impermissible standard and must be reversed. We are not persuaded.

"Before an award can be vacated on the ground that an arbitrator exceeded his authority, the record must objectively disclose that the arbitrator exceeded that authority in some respect." *Birkey Design Group*, 113 Md.App. at 266–67, 687 A.2d 256. "If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Id.*, citing *Graceman v. Goldstein*, 93 Md.App. 658, 675, 613 A.2d 1049 (1992), *cert. denied*, 329 Md. 336, 619 A.2d 546 (1993). The award must be confirmed even if the basis for the arbitrator's award is ambiguous. *Id.* Where an arbitration panel is bound to settle all disputes, it does not exceed its powers by issuing an award of punitive damages. *See, Raytheon Co. v. Automated Business Sys., Inc.*, 882 F.2d 6, 10 (1st Cir.1989).

The Act requires that arbitrators' decisions be in writing and signed by the arbitrators who joined in the award, CJP § 3–219(a); however, the Act does not require that arbitrators issue opinions or memoranda containing full explanations for

their decisions. *Birkey Design Group,* 113 Md.App. at 267, 687 A.2d 256 ("The arbitrator was not obligated to explain his award."). In confirming the decision of the arbitrators, the court relied solely upon the award itself as evidence, noting that appellant failed to provide the court with a transcript of the FINRA proceedings.

Appellant argued before the circuit court that there was no factual or legal basis for the punitive damages award, but the court, noting that Gordon bore the burden of proof, observed: "willful, of course, is another way of saying deliberate, intentional withholding of information." This Court has recognized that "willful and wanton" is another manner of describing outrageous behavior conducted with actual intent or actual malice. *Mech v. Hearst Corp.,* 64 Md.App. 422, 440, 496 A.2d 1099 (1985) (citing *Medina v. Meilhammer,* 62 Md.App. 239, 241, 489 A.2d 35 (1985)).

In three of their counts, appellees claimed that Gordon had fraudulently violated her relationship with them, that all of her actions were taken with the intent to deceive, and amounted to actual malice, evil motive, and an intent to injure. Punitive damages may be awarded for fraudulent actions. *Ellerin v. Fairfax Savings, F.S.B.,* 337 Md. 216, 232, 652 A.2d 1117 (1995). Appellees claimed that Gordon failed to disclose material facts that she had a duty to disclose. A person can be liable for fraud either for knowingly making a false statement of material fact, or for concealing material facts when that person has a duty to disclose. *Hoffman v. Stamper,* 385 Md. 1, 28 n. 12, 867 A.2d 276 (2005) ("It has long been clear that '[f]raud may consist in a suppression of the truth as well as in the assertion of a falsehood.'") (quoting *Schnader v. Brooks,* 150 Md. 52, 57, 132 A. 381 (1926)). The Court of Appeals described the elements of an action based on fraudulent concealment of material facts in *Green v. H & R Block, Inc.,* 355 Md. 488, 525, 735 A.2d 1039 (1999):

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plain-

tiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*See also Levin v. Singer*, 227 Md. 47, 64, 175 A.2d 423 (1961).

Before the circuit court, counsel for appellant complained that "[t]he arbiters' award does not say what count they're deciding on." We reiterate that an arbitrator need not explain the reasoning underlying an award. Moreover, appellant did not provide the trial court with a transcript of the arbitration proceeding. That failure cannot support an attempt to convert the lack of detail to her advantage. *Wicomico County Educ. Ass'n v. Board of Educ.*, 59 Md.App. 564, 567, 477 A.2d 279 (1984).

Moreover, a party to an arbitration who opposes confirmation on the grounds of lack of clarity, has the option to seek a full explanation of the award pursuant to CJP § 3–222(c) ("The arbitrators may modify or correct an award ... for the purpose of clarity."). Appellant did not seek modification or clarification from the arbitration panel. In *Birkey Design Group*, we ruled that a party may not benefit from its decision not to seek clarification through the Act by arguing on appeal that the arbitrator's award is unclear. 113 Md.App. at 271, 687 A.2d 256 ("Party waives the right to argue that an arbitrator's award is unclear if a party fails to file a petition for clarification.").

As appellant's counsel acknowledged before the circuit court, several of the allegations against Gordon "were counts that could support an award of punitive damages." Fraudulent conduct may give rise to an award of punitive damages, and FINRA was careful to note in its award that Gordon had engaged in "willful and wanton" conduct by withholding relevant information she knew about the investment.

On this record, we find nothing to indicate that the arbitrators exceeded their powers by awarding punitive damages. We are further satisfied that, after applying the standards set forth in the Act, the court properly confirmed FINRA's award of punitive damage award. We find no error.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED;**

**COSTS ASSESSED TO APPELLANT.**